996 So.2d 642 (2008)
STATE of Louisiana, Appellee
v.
Jamorris Montreal DURHAM, Appellant.
No. 43,558-KA.
Court of Appeal of Louisiana, Second Circuit.
October 15, 2008.
*644 John Schuyler Marvin, District Attorney, John Michael Lawrence, Robert Lane Pittard, Assistant District Attorney, for Appellee.
W. Jarred Franklin, Louisiana Appellate Project, for Appellant.
Before BROWN, WILLIAMS, and MOORE, JJ.
BROWN, Chief Judge.
Defendant, Jamorris Montreal Durham, was charged by bill of information with simple burglary of an inhabited dwelling, which occurred between the hours of midnight and 8:00 o'clock a.m. on April 24, 2007, a violation of La. R.S. 14:62.2. A jury found defendant guilty. The trial court sentenced defendant to nine years imprisonment at hard labor, with the first year to be served without benefit of parole. A motion to reconsider sentence was filed and denied. Defendant appealed. Defendant's conviction and sentence are affirmed.

Discussion

Sufficiency of the Evidence
Defendant claims that the state failed to prove guilt beyond a reasonable doubt. He argues that his conviction was based on the inconsistent and untrue testimony of two co-defendants, Gabrielle Lynn and Tony Sheppard, who were granted immunity.

Applicable Legal Principles
The decision of the U.S. Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), expanded appellate review of facts in state court criminal cases. The Jackson decision did away with Louisiana's "no evidence" standard because it did not adequately protect due process guarantees. The Jackson reasonable doubt standard is now the only standard of review for Louisiana appellate courts. That standard is whether the evidence, direct or circumstantial, viewed in the light most favorable to the prosecution, was sufficient to prove the elements of the crime beyond a reasonable doubt. This test pronounced in Jackson has been fully implemented by the Louisiana Supreme Court and is legislatively embodied in La. C. Cr. P. art. 821.
Defendant argues that his case is based solely upon circumstantial evidence and, as such, the evidence must exclude every reasonable hypothesis of innocence. *645 La. R.S. 15:438. This statutory (not constitutional) rule, however, is simply a component part of the more comprehensive reasonable doubt standard. State v. Wright, 445 So.2d 1198 (1984). The single standard for appellate review is the standard established by Jackson. See State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78 (Lemmon, J, concurring). The reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the event." State v. Davis, 92-1623 (La.5/23/94), 637 So.2d 1012, 1020. Rather, the court must evaluate the totality of the evidence in a light most favorable to the state and determine whether a rational juror could not have found proof beyond a reasonable doubt. State v. Mitchell, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La.App. 2d Cir.05/09/07), 956 So.2d 769. This includes the testimony of accomplices. An accomplice is a competent witness to testify against his or her co-perpetrator, even if the prosecution offers inducements to testify; these inducements, however, may weigh on the witness's credibility. See State v. Jetton, 32,893 (La.App. 2d Cir.04/05/00), 756 So.2d 1206, writ denied, 00-1568 (La.03/16/01), 787 So.2d 299. The credibility of an accomplice's testimony is not within the province of the court of appeal to decide. Id. Rather, credibility determinations are for the trier of fact. Id. The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; and the reviewing court may impinge on that discretion only to the extent necessary to guarantee due process of law. State v. Casey, 99-0023 (La.01/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).

Facts of the crime as presented at trial
On April 24, 2007, the victim, Angela Warke, returned home at 8:00 a.m. from working a midnight shift to discover that her Bossier Parish residence had been burglarized. Ms. Warke notified the sheriff's office, and Deputy Bruce Bletz, a detective with the Bossier Parish Sheriff's Department, responded. It was determined that entry had been gained through an unsecured window. The items stolen from the home included two laundry baskets, two televisions, an Apex DVD digital theater system, a Kodak digital camera and printer dock, a Dell desktop computer with monitor, a Magnavox DVD player, some women's shoes, DVD movies, approximately $80 in change, a curio cabinet, and food from the refrigerator and pantry. The investigating officers took photographs of the crime scene.
Shortly after the burglary, Ms. Warke received a telephone call from a female. The caller told the victim that she knew where the stolen property was located, that the victim could get it back by paying $2,000, and that she (the caller) would call back with instructions. Ms. Warke notified the sheriff's department of the call, and Deputy Bletz's investigation determined that Gabrielle Lynn was the caller. Deputy Bletz interviewed Ms. Lynn, and during this interview Ms. Lynn informed him that the stolen property had been brought to her residence by her boyfriend, Tony Sheppard, and defendant. This information led to the arrest of both defendant and Sheppard. Although search warrants were executed at different locations, the victim's property was never recovered.
*646 After his arrest, defendant made several telephone calls to various people discussing the burglary; in one of these calls, defendant made arrangements for a mutual friend to call and inform the victim that he would tell her where her property was located if she would drop the charges against him. Ms. Warke knew defendant because they had a one-month friendship/affair that ended before the burglary occurred. Ms. Warke reported the calls to Deputy Bletz, who then gained access to calls defendant made from the jail. Defendant's calls were played in pertinent part for the jury at trial.
Following jury selection, the state dismissed all charges against co-defendant, Tony Sheppard, but ordered him held in jail until he truthfully testified against defendant. Sheppard testified that on the date of the burglary, in the early morning, defendant drove to Ms. Lynn's residence and told him that he had "hit a lick," meaning that he had stolen something. At defendant's request, Sheppard helped defendant move the stolen property from a house on East Third Street to Ms. Lynn's residence. Sheppard described the items as TVs, a computer, a curio cabinet, DVDs, and lots of other things inside two clothes baskets. Sheppard and Lynn went to bed, and the next morning Sheppard moved the stolen items to his (Sheppard's) father's house "where somebody was supposed to come and pick it up." Sheppard admitted that he (Sheppard) made the contact to sell the stolen property but that after viewing the items, the "dude" did not want to buy them.
After their arrest and while in jail, defendant told Sheppard that the property belonged to the victim. Defendant assured Sheppard that there was no way anyone could prove that he took the property and to just "be cool." Ms. Lynn also testified that defendant told her that he had stolen the property from his ex-girlfriend.
Both Ms. Lynn and Sheppard testified against defendant at his trial in exchange for immunity from prosecution. Sheppard acknowledged on cross-examination that the deal allowed him to avoid the possibility of a third felony conviction which would have exposed him to a life sentence.
Defendant also testified at trial. He denied any culpability and named Sheppard as the perpetrator. He stated that it was Sheppard who asked him (defendant) to help move the stolen property. Defendant admitted making the phone calls played for the jury, but said that he made them solely to get the "false charges" dropped.
Tony Allums was called by the state as a rebuttal witness. He testified that he was contacted in late April by Tony Sheppard and was paid $15 by Sheppard to help defendant and Sheppard move the two baskets of electronics in Allums' truck to Sheppard's father's house.

Analysis
Simple burglary of an inhabited dwelling is defined in pertinent part as the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein. La. R.S. 14:62.2.
Having viewed the evidence in the light most favorable to the prosecution as required by Jackson v. Virginia, supra, we find that a rational juror could have found that all of the elements of simple burglary of an inhabited dwelling were proved beyond a reasonable doubt. The identity of defendant as the perpetrator was based upon both direct and circumstantial evidence. Gabrielle Lynn and Tony Sheppard testified that defendant admitted to *647 them that he stole the property from the victim's residence. These statements were corroborated by other evidence, including defendant's possession of the stolen property, his prior relationship with the victim, his telephone conversations from the jail with the victim, family members and friends about the burglary, and his attempt to have the victim drop the charges in exchange for a return of her property.

Denial of Motion to Suppress

Relevant Facts
The defense filed a motion to suppress the recordings of telephone conversations made while defendant was incarcerated at the Bossier Parish Maximum Security Facility. The motion to suppress was based upon the assertion that interception of telephone communications is prohibited by La. R.S. 15:1301 et seq., the "Electronic Surveillance Act," because none of the parties to the conversations affirmatively consented to the interception and recordation.
At the first hearing on the motion to suppress, the parties entered an evidentiary stipulation, as stated by the trial court:
Court: All right, so that is the stipulation that there is a warning that is received that warns any person making a call from the jail that they may be monitored and that is subject to monitoring and ...
(Defense Counsel): and recording.
Court: and recording.[1]
Based on the stipulation, the trial court denied the motion to suppress.
A second pre-trial hearing was held, during which Chief Kenneth Weaver of the Bossier Parish Sheriff's Office testified that he oversees the operation of the Bossier Parish Maximum Security Facility, including the administration of the telephone system. Chief Weaver explained that there are telephones located in the prisoners' cells for their use, and that their social security number is used as an identification number for telephone access. Chief Weaver also stated that all of the prisoners' telephone calls are monitored and recorded. Upon the request of Deputy Bletz, Chief Weaver allowed Bletz access to defendant's calls. The trial court again denied the motion to suppress.
At trial Deputy Bletz testified as to why he started to monitor defendant's outgoing calls:
Ms. Warke, the victim had received several harassing phone calls as well as some phone calls from Jamorris Durham in reference to this incident. So, I felt that it would be in our best interest to monitor some of those phone conversations and see if there was anything in there that would possibly aid in our investigation.

Analysis-Constitutional Claim
Both the Fourth Amendment to the United States Constitution and La. Const. Art. I, § 5 protect people and their privacy against unreasonable governmental intrusion. In Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984), the court analyzed the Fourth Amendment rights against the governmental and societal interest at stake in maintenance of prisons:
Notwithstanding our caution in approaching claims that the Fourth Amendment is inapplicable in a given context, we hold that society is not prepared *648 to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.
...
Within this volatile "community," prison administrators ... must be ever alert to attempts to introduce drugs and other contraband into the premises which, we can judicially notice, is one of the most perplexing problems of prisons today; they must prevent, so far as possible, the flow of illicit weapons into the prison; they must be vigilant to detect escape plots, in which drugs or weapons may be involved, before the schemes materialize ...
...
A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order. We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security. We believe that it is accepted by our society that "[l]oss of freedom of choice and privacy are inherent incidents of confinement." Bell v. Wolfish, 441 U.S., [520] at 537, 99 S.Ct., [1861] at 1873[, 60 L.Ed.2d 447 (1979)].
In State v. Dunn, 478 So.2d 659 (La. App. 2d Cir.1985), this court held that a defendant/prisoner has no right of privacy in his outgoing mail under the Fourth Amendment of the U.S. Constitution or under Art. I, § 5 of the Louisiana Constitution. Applying the rationale set forth by the Supreme Court in Hudson v. Palmer, supra, the court observed that such mail was subject to inspection or perusal to maintain the identifiable governmental interest of prison discipline and security.
In State v. Hussey, 469 So.2d 346 (La. App. 2d Cir.1985), this court upheld the trial court's denial of a motion to suppress, finding that two passengers whose conversation was surreptitiously recorded had no reasonable expectation of privacy while riding in the back seat of a police car. See also State v. Davis, 96-1659 (La.App. 4th Cir.11/27/96), 684 So.2d 540.
In the instant case, we find that defendant did not exhibit a subjective expectation of privacy in the outgoing calls he made from his jail cell. First, the record contains the stipulation that each call contained a warning that it was subject to being monitored and recorded. In fact, in several of the calls made by defendant, he refers to the lack of privacy in the conversations.
Furthermore, even if defendant had exhibited a subjective expectation of privacy, we find that it is not one that society is prepared to accept or recognize as reasonable. As recognized by the Supreme Court in Hudson v. Palmer, supra, the need for jail and prison administrators to maintain order and prevent criminal activity requires a greater ability to monitor the activities of inmates than would be permitted by police in society at large. See also United States v. Van Poyck, 77 F.3d 285 (C.A. 9th (Cal.) 1996); United States v. Amen, 831 F.2d 373 (2d Cir.1987), cert. denied sub nom. Abbamonte v. United States, 485 U.S. 1021, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988); United States v. Willoughby, 860 F.2d 15 (2d Cir.1988), cert. denied, 488 U.S. 1033, 109 S.Ct. 846, 102 *649 L.Ed.2d 978 (1989); United States v. Solomon, 2007 WL 2702792 (W.D.Pa.2007); Sherman v. Hoenish, 2004 WL 1946428 (W.D.Wis.2004); State v. Coyazo, 123 N.M. 200, 936 P.2d 882 (N.M.App.1997); Richardson v. State, 902 S.W.2d 689 (Tex.App.Amarillo 1995).

Analysis-Statutory Claim
No Louisiana court has interpreted the substance of the Louisiana's Electronic Surveillance Act, La. R.S. 15:1301 et seq.; however, the Act was fashioned after its federal counterpart, 18 U.S.C. § 2510 et seq., known as Title III's Omnibus Crime Control and Safe Streets Act.
In particular, the Louisiana Act has adopted the two exceptions provided in Title III. Those two exceptions are: (1) in the ordinary course of duties of investigative or law enforcement officers, La. R.S. 15:1302(10)(a)(ii), and (2) the consent exception, La. R.S. 15:1303(C)(3). Consent may be express or implied from "surrounding circumstances indicating that the [defendant] knowingly agreed to the surveillance." Van Poyck, 77 F.3d at 292, citing Amen, 831 F.2d at 378. As noted above, in the instant case, defendant knew that his telephone calls were subject to being monitored and recorded. In fact, he adverted to this several times during his telephone conversations. It is common and appropriate for prison officials to condition the use of prison telephones on the prisoner's agreement that the calls will be monitored and recorded.
It is equally clear that these calls from the jail phone were monitored and recorded in the ordinary course and duties of the parish sheriff's deputies. Chief Weaver explained the administration and operation of the telephone system. As we have noted, prison officials need to know of potential security breaches such as escape plans or smuggling. It is also unacceptable for a prisoner to use jail phones to harass, extort or threaten the victim of his crime. Like the U.S. Supreme Court, we are satisfied that society would insist that the prisoner's expectation of privacy yield to institutional security. See Hudson v. Palmer, supra.
It may be argued that certain language in the Louisiana Electronic Surveillance Act defines "investigative or law enforcement officers" as "any commissioned state police officer of the Department of Public Safety and Corrections ... and the District Attorney." Se La. R.S. 15:1302(12). No such restriction is found in the federal statute. When dealing with penal institutions, such a restriction limiting monitoring of phone calls to the state police would conflict with the paramount question of jail security. Like the federal statute and jurisprudence, as to jail or prison matters, the Louisiana Act is sufficiently broad to cover local jail facilities and their officers.

Excessive Sentence
In the instant case, when defendant's crime and punishment are viewed in light of the harm done to society by property crimes involving the disregard for the sanctity of people's homes, the nine-year sentence does not shock the sense of justice. This hard labor term is not grossly disproportionate to defendant's offense nor is it a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993). This assignment of error is without merit.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.
WILLIAMS, J., concurs. The result reached is correct.
NOTES
[1] We note that the ADA inarticulately stated that the stipulation was that only the recipient of the call was warned. But as shown, the trial court corrected the statement. Obviously, the better procedure is for the prosecutor to present evidence on any motion to suppress.