# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 10-292

STATE OF LOUISIANA

VERSUS

KEVIN PAUL JACOBS

**********

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 135608A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**********

**JIMMIE C. PETERS**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**CONVICTION AFFIRMED, SENTENCE AFFIRMED AS AMENDED, AND REMANDED WITH INSTRUCTIONS.**

**Gremillion, J., dissents in part and assigns written reasons.**

**Charles A. Riddle, III**
**District Attorney, Twelfth Judicial District Court**
**Dan B. McKay, Jr.**
**Assistant District Attorney, Twelfth Judicial District Court**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**Counsel for Appellee:**
     **State of Louisiana**

**W. Jarred Franklin**
**Louisiana Appellate Project**
**3001 Old Minden Road**
**Bossier City, LA 71112**
**(318) 746-7467**
**Counsel for Defendant/Appellant:**
     **Kevin Paul Jacobs**

**Kevin Paul Jacobs**
**Bossier Sheriff Correctional Facility**
**2984 Old Plain Dealing Rd**
**Plain Dealing, LA 71064**
**Defendant/Appellant:**
     **In Proper Person**

**PETERS, J.**

The State of Louisiana charged the defendant, Kevin Paul Jacobs, with simple burglary of an inhabited dwelling, a violation of La.R.S. 14:62.2. Following a bench trial, the trial court found the defendant guilty as charged. Thereafter, the trial court sentenced the defendant to serve ten years at hard labor without the benefit of probation, parole, or suspension of sentence, with this sentence to run concurrently with any other sentences previously imposed. After the trial court rejected the defendant's motion to reconsider his sentence, the defendant appealed his conviction and sentence. On appeal, the defendant's counsel raises two assignments of error, and the defendant raises three *pro se* assignments of error. For the following reasons, we affirm the conviction in all respects, amend the sentence imposed, and remand the matter to the trial court with instructions.

## DISCUSSION OF THE RECORD

The criminal charge against the defendant arises from a mid-January of 2006 burglary of the Marksville, Louisiana home of William J. Bennett. Judge Bennett[1] had left his home for a weekend trip and, when he returned, he discovered a broken window in the structure. Finding no reason for the broken window, Judge Bennett looked through the home to see if anything was missing. Initially, he found nothing out of place, but approximately two weeks later he received a letter from his credit card company questioning some activity involving the card. This inquiry caused him to perform a further search for missing items, but this time with the emphasis on his wallet and the contents thereof. When he could not find his wallet, he contacted the Marksville City Police and reported the apparent theft.

The ensuing investigation resulted in the arrest of Brandon Frelich, Camille

---

[1]The victim in this criminal offense is one of two district judges in the Twelfth Judicial District.

Swafford, and the defendant. At trial, Frelich became the principal witness against the defendant.

Frelich testified that he met the defendant some time around Christmas in 2005 while buying drugs from the defendant. With regard to the offense itself, Frelich testified that on or about January 14, 2006, at 3:00 or 4:00 in the morning, he and the defendant went to Judge Bennett's home with the intention of committing a burglary; the defendant kicked in the window to Judge Bennett's home; the two men entered the home without permission; and the defendant took Judge Bennett's wallet. Frelich testified that Ms. Swafford was on the scene, acting as a "lookout" for the two men while they were in the house.

Frelich testified that he next saw the wallet when he used a credit card from the wallet to purchase gasoline at a local service station. According to Frelich, after successfully purchasing gasoline with the victim's credit card, he, the defendant, and Ms. Swafford entered the local Walmart store and unsuccessfully attempted to purchase merchandise with the credit card. After leaving Walmart, according to Frelich, they threw the wallet and its contents into a ditch along a local road.

In his testimony, the defendant denied robbing Judge Bennett's home. The defendant asserted that he had been in North Carolina from December 24, 2005, until January 9, 2006. He also testified that from January 13, 2006, until 11:00 a.m. on January 14, 2006, he and Ms. Swafford were at a casino in Marksville. The defendant asserted that he first met Frelich on January 14, 2006, when Frelich approached him while he was sitting with Mrs. Swafford in her car and asked for a ride to Walmart in exchange for buying them gasoline. According to the defendant, somewhere along the way to Walmart he stopped the car at Frelich's instruction, and Frelich retrieved

2

a wallet from a roadside ditch. He acknowledged that Frelich offered to purchase a number of items for him and Ms. Swafford, but claimed that he and Ms. Swafford left the store before Frelich attempted to check out with the merchandise. However, when Frelich joined the couple in the parking lot, according to the defendant, he informed them that he could not complete the transaction because the credit card had been declined. In the defendant's words, this was not a problem to him because Frelich had already purchased the promised tank of gasoline. The defendant asserted that he never saw Frelich again after that day.

In her testimony, Ms. Swafford supported some aspects of the defendant's testimony and contradicted him in other aspects.[2] For example, she supported the defendant's testimony that he was in North Carolina when Frelich claims he first met the defendant[3] but did not support the defendant's assertion that the encounter with Frelich on the day the credit cards were used was his first time to meet Frelich.[4]

Ms. Swafford denied acting as lookout at the bruglary and asserted that her only involvement in the criminal activity occurred when Frelich and the defendant arrived in her automobile to pick her up to go to Walmart. She testified that the three stopped on the way to Walmart to retrieve Judge Bennett's wallet from the side of the road.[5] While she testified that she did not speak with the defendant concerning this unusual event, she also testified that it "seemed" that both the defendant and Frelich

---

[2]In general, Ms. Swafford's testimony was rather rambling and difficult to follow.

[3]She claims that the defendant called her to pick him up at the bus station upon his return in early January.

[4]Mrs. Swafford asserted that she had seen the two men together on at least one occasion in the past.

[5]Ms. Swafford testified that Frelich retrieved the wallet from the top of a utility box, and not simply from the side of the road.

3

had planned to retrieve the wallet. She also testified that all three individuals knew that the credit card they were attempted to use was in the name of William Bennett. In fact, Ms. Swafford asserted that she asked the two men if the card belonged to Judge William Bennett and was told by the defendant that it belonged to Frelich's uncle. Additionally, Ms. Swafford seriously questioned the defendant's contention that he was a law-abiding citizen. According to Ms. Swafford, the defendant's source of income is questionable as he does not have a regular job. She assumed that the defendant was "hustling," or selling something illicit.

The evidence before the trial court also established that Frelich was a cocaine addict and had that he had been convicted of simple burglary approximately two years before his involvement in the burglary of Judge Bennett's home. Furthermore, prior to the defendant's trial, Frelich had pled guilty to simple burglary of Judge Bennett's home and was serving a three-year hard labor sentence for that offense. According to the trial record, this conviction was his fourth felony offense. The record establishes that before the defendant's trial, Ms. Swafford had pled guilty to identity theft, a violation of La.R.S. 14:67.16, for her involvement with the misuse of Judge Bennett's credit card. Based on this plea, the trial court had sentenced her to serve three years on probation.[6]

While both Frelich and Ms. Swafford entered their guilty pleas pursuant to plea agreements with the state, the defendant had gone to trial on the charge of identity theft and had been convicted of that charge by a jury. Thereafter, the trial court sentenced him to serve ten years at hard labor for that conviction, and he appealed that conviction and sentence. This court, in *State v. Jacobs*, 08-702 (La.App. 3 Cir.

---

[6]The trial court record does not specify the underlying sentence that was suspended for imposition of the probationary sentence.

4

2/4/09), 2 So.3d 1289, affirmed his conviction but vacated the sentence and remanded the matter to the trial court for resentencing.[7]

The trial court found the defendant guilty as charged. It concluded that the defendant's testimony was "suspect and questionable," "very odd and suspicious," and ultimately that it was not "believable." By contrast, it found Frelich and Ms. Swafford's testimony to be "largely consistent."

## OPINION

### *Errors Patent Review*

Louisiana Code of Criminal Procedure Article 920(2) requires that all appeals be examined for errors that are "discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence." In performing this examination of the record now before us, we find two such errors.

First, the trial court failed to advise the defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8. That being the case, we must remand this matter to the trial court with instructions to properly inform the defendant of the provisions of that article by providing him with written notice. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

Second, only the first year of the defendant's sentence may be without benefit of probation, parole, or suspension of sentence. *State v. Boowell*, 406 So.2d 213 (La.1981), *State v. Conley*, 411 So.2d 448 (La.1982), and *State v. Wilder,* 499 So.2d 432 (La.App. 2 Cir. 1986). We amend the defendant's sentence to reflect that only the first year is without benefit of probation, parole, or suspension of sentence.

---

[7]This court vacated the sentence because, at the time of the offense, La.R.S. 14:67.16(C)(2) provided for a maximum incarceration sentence of five years with or without hard labor.

5

### *Assignment of Error Number One and*
### *Pro Se Assignments of Error Numbers Two and Three*

The defendant's attorney asserts that "[t]here is insufficient evidence to prove the guilt of defendant beyond a reasonable doubt for the offense of Simple Burglary of an Inhabited Dwelling." The defendant claims that the state failed to prove that he participated in the burglary or that he took the wallet from the victim's home. The defendant urges that Frelich was not a credible witness and the trial court erred in relying on his testimony to convict the defendant. The defendant contends that Frelich testified against the defendant as a result of a plea bargain that substantially benefitted Frelich; thus, Frelich had ample motivation for lying.

In his *pro se* brief the defendant also contends that there was insufficient evidence, specifically arguing that during the early morning hours of January 14, 2006, he was at a casino in Marksville; that Frelich was not a credible witness; that Frelich's claim to have met the defendant during Christmas was impossible because the defendant was out of state from Christmas Eve of 2005 until January 9, 2006; and that a state's witness had been tampered with by the district attorney.

The Louisiana Supreme Court has held that it is not the appellate court's function to second-guess the factfinder's determination concerning the credibility of witnesses:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

6

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (some citations omitted).

In the instant case, the trial court specifically found Frelich and Ms. Swafford to have been more truthful than the defendant. The evidence in the record shows that Frelich and Ms. Swafford had entered into plea bargains with the state prior to the defendant's trial. The trial court was aware of that information when it made its credibility determination, and nothing in the record supports the defendant's claim that a state's witness had been tampered with. The trial court cited the inconsistencies in the defendant's testimony as a basis for determining that the defendant's testimony was untrustworthy.

Under La.R.S. 14:62.2, "simple burglary of an inhabited home is the unauthorized entry of any inhabited dwelling . . . used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or any theft therein[.]" Pursuant to La.R.S. 14:67(A):

> Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.

Because the evidence, when viewed in the light most favorable to the prosecution, shows that the defendant entered Judge Bennett's home without permission and with the intent to commit a theft therein, there is sufficient evidence to support the defendant's conviction for simple burglary of an inhabited dwelling.

There is no merit in these assignments of error. The defendant's conviction is affirmed.

7

### Pro Se Assignment of Error Number One

In this *pro se* assignment of error, the defendant asserts that he received ineffective assistance of counsel because his attorney did not subpoena the correct security records and security surveillance from the casino in Marksville, which the defendant asserts would prove that he was in Marksville on January 14, 2006.

> Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. *State v. Lane*, 40,816 (La.App. 2d Cir. 04/12/06), 927 So.2d 659, 669, *writ denied*, 2006-1453 (La. 12/15/06), 944 So.2d 1283. When the record is sufficient, however, allegations of ineffective assistance of trial counsel may be resolved on direct appeal in the interest of judicial economy. *State v. Ratcliff*, 416 So.2d 528 (La.1982); *State v. Lane, supra.*

*State v. Eiskina*, 42,492, p. 2 (La.App. 2 Cir. 9/19/07), 965 So.2d 1010, 1013.

Here there is not sufficient evidence in the record to resolve this claim of ineffective assistance of counsel; specifically there is nothing in the record to establish what records, if any, were subpoenaed, nor what the proper records would establish. Accordingly, we do not address this claim of ineffective assistance of counsel, leaving it for post-conviction relief.

### Assignment of Error Number Two

In the second assignment of error filed by his attorney, the defendant asserts that "[t]he sentence imposed is excessive for this offender and this offense." The defendant argues that his near-maximum sentence is excessive and claims that the sentencing court failed to give adequate weight to his lack of a prior criminal history.

An excessive sentence is a penalty that is so grossly disproportionate to the severity of the crime that it shocks our sense of justice or it makes no measurable contribution to acceptable penal goals and, therefore, is nothing more than a needless

8

imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court is given wide discretion in imposing a sentence, and, absent a manifest abuse of that discretion, the reviewing court should not deem as excessive a sentence imposed within statutory limits. *State v. Howard*, 414 So.2d 1210 (La.1982); *State v. Pyke*, 95-919 (La.App. 3 Cir. 3/6/96), 670 So.2d 713. Still, a sentence that falls within the statutory limits may be excessive under the particular circumstances of a given case. *State v. Sepulvado*, 367 So.2d 762 (La.1979). Additionally, "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225. The only relevant question for the reviewing court to consider is not whether another sentence would be more appropriate, but rather whether the trial court abused its broad discretion in sentencing a defendant. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615 (1996).

The fifth circuit in *State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183, set forth three factors to be considered by the reviewing court in determining whether the trial court abused its discretion in sentencing a defendant. Those factors are (1) the nature of the offense at issue, (2) the nature and background of the defendant, and (3) sentences imposed by the sentencing court and other courts for similar offenses.

We start this three-prong analysis by acknowledging that all criminal offenses are repugnant to society, but some more repugnant than others. Simple burglary of an inhabited dwelling is one of those offenses that the law considers more serious than others, as evidenced by the range of incarceration sentences available—imprisonment "at hard labor for not less than one year, without benefit of

9

parole, probation or suspension of sentence, nor more than twelve years." La.R.S. 14:62.2. Although commission of the offense does not necessarily involve physical injury or even physical danger to the victim, it constitutes an invasion of an individual's home—a place where he or she should be able to feel totally safe from the evils of the world.

With regard to the nature and background of the defendant, the trial court provided extensive oral reasons for sentencing the defendant as it did. In discussing the aggravating circumstances it found present, the trial court noted that the defendant used the ill-gotten gains of the burglary to commit another felony violation—identity theft; that the defendant exhibited an angry attitude throughout the trial proceedings; that the defendant expressed no remorse for his actions; and that he suffered from a long-term marijuana addiction. In mitigation, the sentencing court noted the defendant's lack of prior convictions and the fact that the house was empty when it was burglarized.

In considering the third factor of the *Lisotta* analysis, we do note that, while it is not the maximum sentence that could imposed, the ten-year hard labor sentence is clearly in the higher range. In comparing the sentences imposed by the trial court for similar activity, the defendant points to the favorable sentences imposed on his co-defendants after they agreed to testify against him. We reject this argument because the general rule is that "the fact that a co-defendant has received a more lenient sentence does not necessarily indicate that the penalty imposed on the defendant is excessive." *State v. Weary*, 03-3067, p. 42 (La. 4/24/06), 931 So.2d 297, 324.

In comparing the defendant's sentence with sentences imposed for similar crimes, we note that there are a number of cases wherein the reviewing courts have

upheld sentences in the upper limits for situations similar to that of the defendant. *See State v. Sharpley*, 414 So.2d 329 (La.1982); *State v. Edouard*, 512 So.2d 579 (La.App. 3 Cir. 1987); *State v. Morris*, 98-236 (La.App. 5 Cir. 9/16/98), 719 So.2d 1076; *State v. Johnson*, 03-150 (La.App. 1 Cir. 9/26/03), 857 So.2d 586; *State v. Alsup*, 42,636 (La.App. 2 Cir. 10/24/07), 968 So.2d 1152, *writ denied*, 07-2252 (La. 4/25/08), 978 So.2d 363; *State v. Durham*, 43,558 (La.App. 2 Cir. 10/15/08), 996 So.2d 642); and *State v. Baker*, 08-898 (La.App. 3 Cir. 2/409), 3 So.3d 666.

We find that the ten-year sentence imposed by the trial court is not illegal, grossly disproportionate to the severity of the offense, or shocking to the sense of justice. Thus, we find no merit in this assignment of error.

## DISPOSITION

We affirm the defendant's conviction in all respects. We amend the defendant's sentence to reflect that only the first year of the sentence is without benefit of probation, parole, or suspension of sentence, and affirm the sentence as amended. Finally, we remand the matter to the trial court with instructions to inform the defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of this opinion and to file written proof that the defendant received the notice in the record of the proceedings.

**CONVICTION AFFIRMED, SENTENCE AFFIRMED AS AMENDED, AND REMANDED WITH INSTRUCTIONS.**

**10-292**

**STATE OF LOUISIANA**

**VERSUS**

**KEVIN PAUL JACOBS**

**GREMILLION, Judge, dissents in part and assigns written reasons.**

Although I agree with the majority's opinion in all other respects, I disagree with the majority's finding that Defendant's sentence is not excessive. Defendant argues that the sentencing court failed to give adequate weight to his lack of a prior criminal history. Moreover, Defendant complains that Frelich, who had four prior convictions, received a much more lenient sentence of three years.

At the sentencing hearing the trial court listened to argument by counsel and a statement by Defendant. Thereafter, the trial court gave extensive oral reasons wherein it discussed "the aggravating and mitigating circumstances." The trial court did so again at the hearing of Defendant's motion for reconsideration of sentence.

The only prior offense discussed in the record is the identity theft conviction, which arose from the use of a credit card contained in Judge Bennett's stolen wallet. Thus, the identity theft conviction arose from the same course of events as the instant conviction. The only aggravating factors the sentencing court mentioned were Defendant's angry attitude throughout the trial proceedings and his marijuana use. The trial court specifically found that the victim's status as a district court judge was irrelevant. In mitigation, the sentencing court noted Defendant's general lawfulness and the fact that the house was empty when it was burglarized.

However, at the reconsideration hearing, the defense stated that, in comparison, Defendant's sentence was excessive because of the favorable deals garnered by his co-defendants; Frelich received a three-year sentence in exchange for testifying

against Defendant, and Swafford received three years of probation.

The defense also pointed out that Frelich had a prior criminal record of acts similar to the instant case, which would have motivated him to seek a plea agreement in order to avoid a multiple offender adjudication. In contrast, Defendant had no felony convictions, and overall, his criminal record was not excessive. The defense argued that Defendant was a "fairly model citizen."

The statutory penalty range for committing simple burglary of an inhabited dwelling is imprisonment "at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years." La.R.S. 14:62.2. Thus, Defendant's sentence is a high-range penalty.

After examining the jurisprudence, it is clear that, in simple burglary of inhabited dwelling cases, sentences of ten years or greater are usually accorded to defendants with extensive criminal histories or when the crime involved firearms. *State v. Baker*, 08-898 (La.App. 3 Cir. 2/4/09), 3 So.3d 666 (the defendant stole a shotgun and was a third felony offender); *State v. Dunn*, 30,346 (La.App. 2 Cir. 2/25/98), 708 So.2d 512 (the defendant, who was on probation at the time of the offense, had an extensive criminal record involving similar crimes, and when he was caught in the act, he wrestled a firearm away from the arresting officer while resisting arrest); *State v. Surtain*, 529 So.2d 1375 (La.App. 5 Cir. 1988) (the defendant had a prior felony conviction, as well as two misdemeanors; however, he was not prosecuted as a multiple offender); *State v. Sharpley*, 414 So.2d 329 (La.1982) (though it was the defendant's first felony conviction, the defendant had an extensive criminal history and had stolen firearms during the burglary); *State v. Edouard*, 512 So.2d 579 (La.App. 3 Cir. 1987) (the defendant had numerous misdemeanor convictions, and it was likely the defendant would commit additional crimes if not incarcerated).

In contrast, appellate courts have affirmed sentences of nine years or less for defendants convicted of simple burglary of an inhabited dwelling without an extensive criminal history and without firearms being involved. In *State v. Durham*, 43,558 (La.App. 2 Cir. 10/15/08), 996 So.2d 642, the second circuit affirmed a nine-year sentence in a case where the defendant had burglarized a home while the victim was at work. The second circuit mentioned no aggravating or mitigating factors in its analysis:

> In the instant case, when defendant's crime and punishment are viewed in light of the harm done to society by property crimes involving the disregard for the sanctity of people's homes, the nine-year sentence does not shock the sense of justice. This hard labor term is not grossly disproportionate to defendant's offense nor is it a purposeless and needless infliction of pain and suffering.

*Id.* at 649.

In *State v. Alsup*, 42,636 (La.App. 2 Cir. 10/24/07), 968 So.2d 1152, *writ denied*, 07-2252 (La. 4/25/08), 978 So.2d 363, the second circuit affirmed an eight-year sentence for simple burglary of an inhabited dwelling where the defendant was a first felony offender with several misdemeanor convictions. The record showed that the defendant had also committed new offenses while on bond for the simple burglary charges.

In *State v. Johnson*, 03-150 (La.App. 1 Cir. 9/26/03), 857 So.2d 586, the first circuit affirmed a nine-year sentence for simple burglary of an inhabited dwelling; the defendant entered into a plea bargain wherein the State agreed not to charge him as a habitual offender though the defendant had been on parole for aggravated burglary at the time of the offense. Thus, defendants with more aggravating circumstances have received less onerous sentences.

The foregoing review of the sentences imposed for similar offenses and offenders indicates that, in the instant case, a sentence of ten years is constitutionally excessive. Accordingly, I would find the trial court abused its discretion in

sentencing Defendant and I would remand for resentencing. Thus, I respectfully dissent.