STEWART, J.
L The defendant, Daniel Frank Guess, Jr., was convicted of second degree murder and sentenced to life imprisonment at hard labor. He now appeals his conviction and sentence. Finding no merit to the assignments of error, we affirm.
FACTS
On January 28, 2010, a grand jury indicted the defendant for the second degree murder of Alton “Buster” Porter (“Porter”) on January 17, 2010. The events *44 leading to the murder were established at the jury trial.
Terrance Greely (“Greely”) testified that the defendant picked him up at his house on the- night of January 16, 2010, and asked to borrow a gun. Greely did not have a gun on him, so he took the defendant to get a gun he had stashed in an Expedition that belonged to Antonio Morris (“Morris”). Later, they went to the defendant’s trailer where a number of the defendant’s friends were hanging out, drinking, and smoking marijuana. By some accounts, the defendant and others were also taking Xanax.
At some point later that night, the defendant wanted to leave the trailer and asked Greely to drive him. They left in a vehicle that belonged to the defendant’s stepbrother, Michael Fleming (“Fleming”). Greely was not familiar with the rural community, so the defendant directed him on where to go. Greely testified that the defendant had him stop by one home. He waited in the car while the defendant left the vehicle. When the defendant returned, he directed Greely to another location. As they were driving, the defendant told Greely that he passed up the house. Greely stopped and then backed into a driveway. The defendant left the vehicle, and Greely 12watched him walk up to the house until his phone rang. Greely was still on the phone when the defendant “jumped” in the vehicle and “stated that he shot him.” Greely was shocked by the defendant’s statement. He dropped his phone, then picked it up and told the person that he’d call back later. The cell phone was admitted into evidence and showed the time of the call to be 1:27 a.m. and that it lasted five minutes and 33 seconds.
As Greely drove away from the victim’s home and began to pick up speed, the defendant warned him that the brakes on the vehicle were not that good. Greely then hit the brakes and lost control of the vehicle, which ended up in a ditch. The two exited the vehicle. Greely began walking down the street, but the defendant told him that he was going in the wrong direction. They then called for a ride back to the defendant’s trailer. The defendant gave the gun back to Greely, who brought it the next day to Willie Moy (“Moy”) and instructed him to hide it.
Morris testified that he gave Greely and the defendant a ride back to the trailer after they wrecked the vehicle and that, once home, the defendant said that he shot someone twice in the head. Fleming, who was called by the defense, admitted with reluctance on cross-examination that he heard the defendant saying that he shot someone. Ashley Circolone was also at the defendant’s trailer that night. She testified that the defendant told her that he killed “Buster.” The next day Circo-lone told the defendant’s sister, Holly Guess (“Holly”), who contacted a friend who was with Chelsea Parker at the time. Parker called Porter’s sister, Donna Kap-penman, to check on him. Kappenman, her husband, daughter and son-in-law ran to | .^Porter’s house where they found the door unlocked and Porter lying on the floor of his bedroom between the bed and dresser.
Lieutenant Renee Smith (“Smith”), a crime scene unit coordinator for the Oua-chita Parish Sheriffs Office (“OPSO”), identified a number of photographs taken at Porter’s home. Smith testified that Porter had gunshot wounds to his back and face, that there were no signs of a forced entry or struggle, and that no drugs or drug paraphernalia were found in Porter’s home. Bryan Boney, an OPSO investigator, testified that the gun was located behind a vacant house near Moy’s residence on Tanglewood. Audra Williams, a *45 forensic DNA analyst with the North Louisiana Crime Lab in Shreveport, found DNA matches between buccal swabs from the defendant and swabs from the base pin and the rubber grip on the gun.
Dr. Frank Peretti, an expert in forensic pathology, was present when the autopsy was performed and testified as to the findings in the report. According to Dr. Per-etti, Porter had two entrance gunshot wounds. The wound to Porter’s right cheek showed evidence of stippling, which occurs when the weapon is not directly against the skin when fired but is close enough to have grains of burnt and unburnt gunpowder fall on the skin. Porter sustained a second wound on the right side of his back. Peretti considered this to be the fatal wound, because it caused internal bleeding and injury to the lung. Both bullets were recovered from Porter’s body. Dr. Peretti testified that Porter did not have any defensive injuries. Toxicology and urinalysis results showed that Porter had methamphetamine in his blood and urine at the time of his death.
I/The state introduced into evidence and played for the jury a recording of a phone call made by the defendant from jail to his mother. During this call, the defendant stated that Porter “deserved what he got” and “deserved what I did to him.”
The defense attempted to paint Porter as a drug pusher and to establish an intoxication defense. Amanda Stancill, a friend of the defendant and his sister Holly, testified that she had visited Porter’s home with the defendant approximately five times during the holidays before the murder occurred. She claimed they went there for “dope.” Stancill testified that she saw Porter take drugs out of a locked drawer and that he had a handgun in the drawer as well. She also testified that Porter kept needles for drug use in an old coffee can on a kitchen cabinet.
The defendant’s then girlfriend, Kimberly Norris, was at the defendant’s trailer the night of January 16, 2010. She testified that the defendant was taking “Xanax bars.” She recalled that she had taken two Xanax and that the defendant had taken eight. She also recalled that he was passed out at a table when she left the trailer sometime between 12:30 pm and 1:00 am to go to a McDonald’s. She testified that the defendant was not at the trailer when she returned and that she left before he got back. Brittany Teston, who was also partying at the defendant’s trailer and accompanied Norris to McDonald’s, testified that the defendant was “passing out” at a kitchen table when they left and that he was drunk and had taken Xanax.
IsFleming, who also lived in the trailer, testified that the defendant was “really messed up,” slurring, and that his eyes were red and “glazed over.” He recalled that the defendant asked to use his car. He explained that he let him use it because the defendant would have done so anyway as the keys were left in the car. Fleming admitted that the defendant left the trailer sometime during the night, and he stated that the defendant was “still messed up” when he returned. As previously stated, Fleming admitted that he heard the defendant say that he shot someone in a house.
After deliberations, the jury returned a verdict of guilty as charged of second degree murder. At the sentencing hearing, the trial court imposed the mandatory life sentence without benefits. This appeal followed.
On appeal, the Louisiana Appellate Project assigns as error the insufficiency of the evidence and the excessiveness of the sentence. The defendant has filed a pro se brief with additional assignments of error.
*46 SUFFICIENCY OF THE EVIDENCE
Both appellate counsel and the defendant argue that the evidence was insufficient to prove the elements of the offense beyond a reasonable doubt. They assert that the defendant was intoxicated at the time of the offense to such a degree that he could not have had the specific intent to kill or inflict great bodily harm. The defendant also argues that the state did not prove he acquired the gun to shoot Porter and did not rebut the reasonable assumption that he got the gun to protect himself at the first location he stopped at before going to Porter’s residence. This latter argument is of no . merit and bears no further discussion.
| ,;The state counters that the only germane issue is whether the defendant had specific intent to commit the offense. The state asserts that the evidence proved that the defendant had the requisite specific intent when he shot Porter.
At issue on review of a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. La. C. Cr. P. art. 821; Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086.
In applying the Jackson standard, the appellate court may not assess the credibility of witnesses, weigh the evidence, or substitute its own appreciation of the evidence for that of the fact finder. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753. The trier of fact may, within the bounds of rationality, accept or reject the testimony of any witness, and the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
The Jackson standard applies in cases involving both direct and circumstantial evidence. Where an essential element of the crime is proven by circumstantial evidence rather than by direct evidence, La. R.S. 15:438 restrains the fact finder and the reviewer on appeal to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. State v. Van Sales, 38,138 (La.App.2d Cir.3/3/04), 867 So.2d 849, writ denied, 2004-1305 (La.4/22/05), 899 So.2d 569.
 Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific intent is the state of mind that exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Draughn, 2005-1825 (La.1/17/07), 950 So.2d 583, cert. denied, 552 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007). The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or to inflict great bodily harm on that person. State v. Dooley, 38,763 (La.App.2d Cir.9/22/04), 882 So.2d 731, *47 writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30; State v. Brooks, 36,855 (La. App.2d. Cir.3/05/03), 839 So.2d 1075, writ denied, 2003-0974 (La.11/07/03), 857 So.2d 517.
| ^Intoxication is a defense when the circumstances indicate that the intoxicated or drugged condition precluded the presence of a specific criminal intent or of special knowledge required in a particular crime. La. R.S. 14:15(2). Intoxication is an affirmative defense that must be proved by the defendant by a preponderance of the evidence. State v. Hall, 43,920 (La. App.2d Cir.2/25/09), 4 So.3d 295, writ denied, 2009-0691 (La.12/11/09), 23 So.3d 911; State v. Tolbird, 28,986 (La.App.2d Cir.12/11/96), 685 So.2d 415. If the defendant proves he was intoxicated at the time of the offense, the burden is on the state to negate that defense by proof beyond a reasonable doubt. Hall, supra. The jury is the ultimate factfinder of whether a defendant proved his intoxicated condition and whether the state negated the defense. State v. Legrand, 2002-1462 (La.12/3/03), 864 So.2d 89, cert. denied, 544 U.S. 947, 125 S.Ct. 1692, 161 L.Ed.2d 523 (2005).
Witnesses who were present at the defendant’s trailer on the night of the murder testified that there had been a lot of drinking and likely some drug use by the defendant. Greely testified that the defendant was “pretty drunk,” wasted, and smoking marijuana. When asked whether the defendant was slurring, Greely answered “not really.” Morris likewise testified that the defendant was drunk that night. He elaborated by saying that the defendant was leaning, staggering a little, and slurring. Defense witnesses Teston and Norris testified that the defendant had also taken a good bit of Xanax in addition to being drunk. Both women claimed that he was passed out at a table when they left the trailer to go to a McDonald’s 19sometime after midnight. The defense introduced into evidence a photograph (Exhibit D-5) of the defendant taken by Norris that night. The photograph shows the defendant sitting in a chair with his elbow on the table and his head in his hand. He is not “passed out.”
While the testimony recounted above suggests that the defendant likely consumed alcohol and drugs on the night of the crime, merely taking drugs or drinking is insufficient to meet the preponderance of the evidence burden required to prove the affirmative defense of intoxication. Contrary to the defendant’s claim that his intoxication was so severe as to preclude the formation of specific intent, the evidence showed that the defendant still had the ability to make decisions and reason.
The defendant asked for a ride when he wanted to leave the trailer late that night. Greely was unfamiliar with the rural area, but the defendant was cognizant enough to direct him to two different locations. He even directed Greely to stop and go back when he passed Porter’s house. At both locations, the defendant left the vehicle of his own volition. When the defendant returned to the vehicle after being at Porter’s house, he immediately told Greely that he shot the victim. The defendant then maintained the presence of mind to warn Greely that the brakes on the vehicle were bad and call him back when he began walking the wrong way down the road after they wrecked.
The defendant’s actions were not those of a person who was so highly intoxicated that he did not know what he was doing or what may have happened. Instead, the evidence shows that the defendant was completely | inaware of what he did at Porter’s house and that he then freely informed Greely and others of it. The evidence was sufficient to allow the jury to *48 reject the claim of intoxication and find that the state negated that defense by proof beyond a reasonable doubt.
The evidence further showed that the defendant obtained the gun early in the evening when he picked up Greely. He had the gun with him when he had Greely drive him to Porter’s house. He shot Porter twice, once in the face and once into his back. The weapon was fired at a relatively close range as indicated by the stippling found in the area of the victim’s cheek wound. These circumstances and the conduct of the defendant are indicative of specific intent to kill or inflict great bodily harm on Porter.
Viewing the evidence in the light most favorable to the prosecution, we find that the jury could have found the elements of second degree murder proven beyond a reasonable doubt. The jury, as the trier of fact, was in the best position to determine the credibility of the witnesses, and there was sufficient evidence presented to show that the defendant was not so intoxicated that he was unable to form the requisite specific intent to kill or to inflict great bodily harm.
EXCESSIVE SENTENCE
The defendant contends that the trial court imposed an unconstitutionally harsh and excessive sentence. He asserts that the trial court did not account for the fact that he was only 20 years old when he committed the offense, that he was intoxicated at the time, and that he hadj^no prior felony convictions. The state counters that it is a mandatory sentence and that the defendant had a history of violent altercations.
No motion to reconsider the sentence was filed; therefore, the claim is limited to a review for constitutional exces-siveness only. The test for constitutional excessiveness is whether the sentence is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
The assertion that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment under La. Const. Art. 1, § 20 has been repeatedly rejected. State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977); State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556.
Even though the legislature has provided a mandatory life sentence for second degree murder, the trial court ordered a presentence investigation and considered the factors of La. C. Cr. P. art. 894.1 prior to imposing sentence. The trial court noted that the defendant was a first felony offender but that he did have a history of misdemeanor offenses involving violent altercations. The trial court concluded that the defendant’s criminal history 112culminating in the instant offense showed he had a pattern of resorting to violence to settle differences.
The defendant has not demonstrated that the sentence is constitutionally excessive due to his age. Life sentences have been upheld for youthful and even juvenile offenders.[1] See State v. Kelly, 45,562 (La. *49 App.2d Cir.8/11/10), 46 So.3d 229, writ denied, 2010-2114 (La.2/11/11), 56 So.3d 1001; State v. Pilcher, 27,085 (La.App.2d Cir.5/10/95), 655 So.2d 636, writ denied, 95-1481 (La.l1/13/95), 662 So.2d 466. In light of the fact that the jury rejected the defendant’s intoxication defense, we cannot find that his intoxication justifies a lesser sentence. The facts show that the defendant obtained a gun, went to the defendant’s home in the middle of the night, shot him twice at close range, and then told his friends what he had done. He exhibited no remorse for taking a life. The sentence is not grossly out of proportion to the seriousness of the offense and is not shocking to the sense of justice. It is not constitutionally excessive. Accordingly, we find no merit to this assignment of error.
PRO SE ASSIGNMENTS OF ERROR

Testimony Regarding Photograph

In a pro se assignment of error, the defendant argues that the state made an improper appeal for sympathy by introducing a photograph and that the trial court erred in overruling an objection by the defense to 113testimony identifying the victim’s family members shown in the photograph.
The trial court’s determination regarding the relevancy of evidence is entitled to great weight and will not be overturned on appeal absent a clear abuse of discretion. State v. Jordan, 31,568 (La.App.2d Cir.2/24/99), 728 So.2d 954, writ denied, 99-0893 (La.10/8/99), 750 So.2d 177. Photographs are generally admissible if they illustrate any fact, shed light upon any issue in the case, or serve to describe the person, thing, or place depicted. State v. Gay, 29,434 (La.App.2d Cir.6/18/97), 697 So.2d 642. Relevancy of evidence is determined by the purpose for which it is offered. State v. Caston, 26,415 (La.App.2d Cir.10/26/94), 645 So.2d 1202, writ denied, 94-3137 (La.5/5/95), 654 So.2d 337.
A judgment or ruling will not reversed on appeal because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused. La. C. Cr. P. art. 921.
The photograph, which was introduced as Exhibit S-l, depicts a dresser in Porter’s bedroom. A number of family photographs are on the dresser. Porter’s sister, Kappenman, testified that she frequently visited her brother at his home, that she had last visited him that Friday before the murder, that she was familiar with the layout of his bedroom, and that S-l depicted the way Porter’s dresser usually appeared. The photograph was admitted without objection and published to the jury. Thereafter, the prosecutor asked Kappenman if she recognized the people in the photographs shown on the dresser. As Kappenman began identifying the 114family members in the photographs, defense counsel objected on the basis that such testimony was not relevant other than as an appeal for sympathy. The trial court overruled the objection as untimely because there had been no objection when S-l was introduced.
We find no reversible error in the trial court’s overruling of the objection to Kap-penman’s testimony identifying family members shown in the photographs on the dresser depicted in S-l. The state laid a proper foundation for the introduction of S-l, and defense counsel did not object to *50 its introduction. It is readily apparent from S — 1 that the victim had a number of family photographs on his dresser. The jury would have realized this even if Kap-penman had not identified them as such. Merely identifying the people shown in the photographs on the dresser as family members is not something that would be likely to garner sympathy from the jury or prejudice the defense. We do not find that the introduction of S-l or Kappen-man’s testimony affected any substantial rights of the defendant nor do we find that the trial court abused its discretion in overruling the defense’s objection. Moreover, any such error allowing the photograph or testimony identifying the family members shown in it would surely be harmless error. Accordingly, we find no merit to this assignment of error.

Improper Impeachment

In another pro se assignment of error, the defendant asserts that the state improperly allowed one of its witnesses to comment on the truthfulness of a defense witness prior to her testimony. The defendant 11sasserts that this was an improper impeachment of that witness and constituted prosecutorial misconduct.
When questioned about the investigation and the statements obtained from various witnesses, Detective Bryan Boney testified that he took more than one statement from the defendant’s sister, Holly Guess. When asked why, he replied, ‘Well, the first statement I didn’t feel like she was telling the complete truth,” at which point defense counsel objected. The basis for the objection was hearsay and that the state was attempting to impeach Guess before her testimony. The state countered that Boney was not testifying to anything Guess said and that it was not trying to impeach her. After the trial court overruled the objection, the state rephrased the question by asking whether Guess gave additional or different information in her second statement. Boney indicated that she did. The defense objected again and was overruled.
First, we note that Guess did not testify before the jury. During the defense’s case, the trial court heard some testimony outside the presence of the jury on a motion in limine to determine what testimony could be presented concerning the character of the victim. Guess testified for purposes of the motion, but the defense chose not to call her to testify before the jury. As such, the alleged impeachment of her testimony was of no effect on the jury’s verdict. Second, Boney’s testimony concerned his investigation and the steps he took to obtain witness statements. He did not disclose the content of Guess’s statements, and the prosecutor rephrased the question such that Boney merely indicated that Guess included additional 1 ^information in her second statement. We find no prosecutorial misconduct by the state. Accordingly, this assignment is without merit.

Introduction of Recorded Jail Call

In his next pro se assignment of error, the defendant contends that the trial court erred in allowing the state to introduce the recording of his phone call from jail to his mother. He contends that this was an illegally intercepted wire communication in violation of the Electronic Surveillance Act, La. R.S. 15:1301 et seq., and his constitutional rights. A motion to suppress the recorded phone call had been urged by defense counsel and denied by the trial court. Appellate counsel has not assigned that denial as error.
Similar arguments were made and rejected by this court in State v. Durham, 43,558 (La.App.2d Cir.10/15/08), 996 So.2d 642. Though La. Const. Art. I, § 5 and the Fourth Amendment of the United States Constitution afford protection for *51 individuals against unreasonable governmental intrusion, this court found that prisoners do not have a subjective or reasonable expectation of privacy in outgoing calls made from jail. Citing Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), we recognized that “the need for jail and prison administrators to maintain order and prevent criminal activity requires a greater ability to monitor the activities of inmates than would be permitted in society at large.” Durham, 43,558, p. 10, 996 So.2d at 648.
In Durham, supra, this court also rejected the claim that introduction of the recorded jail calls violated the Electronic Surveillance Act. The court |17found two exceptions applicable under that act. The first exception is where the telephone, equipment, or facility are being used by an investigative or law enforcement officer in the ordinary course of business. La. R.S. 15:1302(10)(a)(ii). In both Durham and here, testimony established that the calls were monitored and recorded in the ordinary course and duties of the sheriff’s deputies. The second exception is where a person acting under color of law intercepts a communication where one of the parties to the communication has given prior consent to the interception. La. R.S. 15:1303(0(3). As in Durham, supra, the defendant here was notified when he made the call that it was subject to monitoring and recording. By proceeding with the call, the defendant consented to its interception. For the reasons set forth in Durham, supra, we find no merit to this assignment of error. See also State v. Favors, 09-1034 (La.App.5th Cir.6/29/10), 43 So.3d 253, writ denied, 2010-1761 (La.2/4/11), 57 So.3d 309.

Responsive Verdicts

In this pro se assignment of error, the defendant complains that the trial • court minimized the instructions to the jury on the responsive verdict of not guilty and thereby impermissibly implied that the defendant was guilty. The defendant’s complaint refers to the trial court’s response to the jury’s request for a copy of the definitions of the responsive verdicts. In consultation with counsel for the state and the defense, the trial court determined that it would not provide the jury with a copy of the charges but that it would again read that part of the jury charges defining the responsive verdicts. The jury was brought back to the courtroom to hear the responsive 11sverdicts again. The trial court recited the definitions of second degree murder, manslaughter, negligent homicide, and the intoxication defense. The court also stated that the jury must always consider a verdict of not guilty. After the jury resumed deliberations, defense counsel objected that the trial court had not included the full language from the jury charge explaining what not guilty means. The trial court noted, and apparently overruled, the objection.
We find no merit to the defendant’s complaint. The jury requested the definitions of the responsive verdicts. There is no specific definition for not guilty, other than the lack of proof of the charged offense or its lesser and included offenses. Moreover, when the jury was brought to the courtroom to again hear the responsive verdicts, the trial court stated three times that the jury could find the defendant not guilty. Thus, it cannot be said that the trial court minimized not guilty as a responsive verdict or implied that the jury should find the defendant guilty. We find no merit to this assignment.

Appeal Record

In his last pro se assignment of error, the defendant complains that the appellate record is incomplete and that he did not *52 have access to the complete record for appeal purposes. The defendant also filed a motion on May 11, 2012, to amend the appellate record to include the opening and closing arguments, the jury charges, the police records, and the records of trial counsel. He also filed a motion to reset deadlines. However, his pro se l^brief was filed May 16, 2012, thereby rendering moot any complaint regarding the deadlines and the claimed missing parts of the record.
As designated for appeal purposes by request of appellate counsel and as ordered by the trial court on November 7, 2011, the appellate record includes the entire trial court record as well as the transcript of the trial except for jury selection, opening statements and closing arguments. The jury charges are included in the record. As provided in La. C. Cr. P. art. 914.1(A), the party who makes a motion for an appeal shall, when the motion is made, request a transcript of that part of the proceedings necessary in light of the assignments of error to be urged. The defendant has not indicated any errors concerning that part of the proceedings not included in the appeal record. Accordingly, we find no merit to this assignment of error.
CONCLUSION
For the reasons stated, the defendant’s conviction and sentence are affirmed.
AFFIRMED.