STATE OF LOUISIANA

VERSUS

RAYMOND H KIMBLE III

NO. 22-KA-373

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 16-3781, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING


May 08, 2024


**TIMOTHY S. MARCEL**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Marc E. Johnson, and Timothy S. Marcel


**CONVICTIONS AFFIRMED; SENTENCES ON COUNTS FIVE AND**
**TEN AMENDED; REMAINING SENTENCES AFFIRMED;**
**REMANDED**
    **TSM**
    **JGG**
    **MEJ**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUB RECORDS

Morgan Naquin
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
     Honorable Paul D. Connick, Jr.
     Monique D. Nolan
     Thomas J. Butler
     Lindsay L. Truhe

COUNSEL FOR DEFENDANT/APPELLANT,
RAYMOND H KIMBLE III
     Raymond H. Kimble, III
     Lieu T. Vo Clark

**MARCEL, J.**

Defendant, Raymond H. Kimble, III, appeals his convictions and sentences for eight counts of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2, theft valued between five thousand dollars and twenty-five thousand dollars in violation of La. R.S.14:67, and aggravated flight from an officer in violation of La R.S. 14:108.1(C). On appeal, he argues two counseled assignments of error and six *pro se* assignments of error.

For the following reasons, we find that defendant's assignments of error are without merit. Accordingly, we affirm his convictions and sentences, except, however, as explained below, we amend defendant's sentences as to counts five and ten, and remand the matter to the trial court for corrections of errors patent.

## PROCEDURAL HISTORY

Defendant was charged by bill of information on November 24, 2020.[1] In that superseding bill, defendant was charged with eight counts of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2 (counts one through four and six through nine), one count of theft valued between five thousand dollars and twenty-five thousand dollars in violation of La. R.S. 14:67 (count five), and one count of aggravated flight from an officer in violation of La. R.S. 14:108.1(C) (count ten).

On December 17, 2021, the twelve-person jury found defendant guilty as charged on all counts. Defendant timely filed a Motion and Incorporated

---

[1] On June 14, 2016, the Jefferson Parish District Attorney filed an original bill of information charging defendant, Raymond H. Kimble III, with eight counts of simple burglary of an inhabited dwelling in violation of La. R.S. 14:62.2 (counts one through eight), aggravated flight from an officer in violation of La. R.S. 14:108.1(C) (count eleven), and theft valued between five thousand dollars and twenty-five thousand dollars in violation of La. R.S. 14:67 (count twelve). In that same bill, Brian D. Ernst was charged in counts one through ten and count twelve. Count eleven also charged Lauren E. Malbrough with aggravated flight from an officer. The superseding bill includes handwritten notations. As to count five, the date was amended, the count was altered to reflect that defendant was charged with the theft of a "Hyundai Tuscon," rather than the theft of jewelry, and "and/or Katie Dolese" was added as a victim. Also, as to count nine, the address of the residence was amended.

Memorandum for New Trial and a Motion for Post-Verdict Judgment of Acquittal. The trial court denied both motions.

At the sentencing hearing held on February 7, 2022, defendant was sentenced to six years imprisonment for each the eight counts of burglary, eight years imprisonment for theft, and five years imprisonment for aggravated flight from an officer. Each sentence was imposed at hard labor. The first year of the sentences imposed for burglary and theft were ordered to be served without the benefit of parole, probation, or suspension of sentence. The sentences for burglary and theft were ordered to be served consecutively, with the sentence for aggravated flight to run concurrently with the other counts.

That same day, the State filed a multiple offender bill of information. Defendant stipulated to being a fourth-felony offender as to count ten, aggravated flight from an officer. The judge vacated the original five-year sentence for that crime and imposed a sentence of twenty years imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The enhanced sentence for count ten was ordered to run consecutively with counts one through four and six through nine and concurrently with the sentence imposed for count five, making defendant's total sentence sixty-eight years.

Defendant filed a counseled Motion for Reconsideration of Sentence on February 7, 2022 and a *pro se* Motion to Note Formal Objection on February 11, 2022. In the latter pleading, defendant asked that the judge note his objection to the sentence imposed as being excessive and to the multiple bill filed by the State. The trial judge denied the counseled motion to reconsider sentence. Defendant timely filed a counseled Motion for Appeal, which was granted on February 16, 2022. Nearly one year after his conviction, defendant filed a *pro se* Motion for New Trial with supporting memorandum on December 9, 2022. Therein,

defendant sought a new trial on grounds that new and material evidence existed, and that the State withheld exculpatory impeachment evidence. On December 13, 2022, this Court remanded the matter to the trial court for consideration of the motion for new trial. On February 15, 2023, the trial judge denied the motion for new trial. Thereafter, defendant filed a *pro se* Rebuttal to State's Opposition to Motion for New Trial and Supplemental Motion for New Trial in Accord with La.C.Cr.P. art. 856 on March 3, 2023. A *pro se* Notice of Appeal and Formal Objection dated March 5, 2023, appears in the record. In it, defendant sought to appeal the February "16," 2023, denial of his motion for new trial and to have the court note his objection to that ruling.[2] On March 13, 2023, the trial judge granted the motion to appeal.

On appeal, defendant's counseled brief asserts that the sentences imposed are unconstitutional and that the judge erred in denying the motion to reconsider sentence. In the *pro se* appellant brief, defendant argues that the evidence was insufficient to support the jury's guilty verdicts, that the judge erred in admitting other crimes evidence, and that the trial transcripts are incomplete. Additionally, defendant contends that he had ineffective assistance of counsel, that his right to present a defense was denied by exclusion of certain evidence, and that the State suppressed exculpatory and impeachment evidence.

## FACTS

In the spring of 2016, eight homes in Metairie, Louisiana were burglarized over three separate days in March and April (2016 Metairie burglaries). Additionally, a car belonging to the daughter of a burglary victim was stolen from outside her residence. Defendant was arrested for the burglaries and theft. He was also charged with aggravated flight from an officer based on the events preceding

---

[2] The trial court actually denied the motion for new trial on February 15, 2023.

his arrest. Also arrested for these crimes was Brian Ernst (Ernst). During this time, defendant lived with his girlfriend, Lauren Malbrough (Malbrough), who is Ernst's sister. Evidence was presented at trial that in 2016, defendant and Ernst were involved in burglaries of homes in East Baton Rouge Parish (Baton Rouge burglaries). Further, evidence was presented at trial that defendant was involved in other Metairie home burglaries occurring in 2015 (2015 Metairie burglaries) and a 2015 Mandeville home burglary (Mandeville burglary) with an individual named Dustin Johnson.

*408 Dorrington Boulevard*

Julie Martin resided at 408 Dorrington Boulevard on March 7, 2016. On that day, Martin was out running errands when she received a call reporting that her home had been broken into. Her housekeeper was in her home at the time. Also, during this time, Kevin Cole was en route to Ms. Martin's home to perform plumbing service. Cole observed a truck speeding out of Ms. Martin's driveway as he approached the residence. Entering through the front door, Cole observed broken glass near the back door of the residence. When Ms. Martin returned home, she too observed the broken glass and noted the back door was slightly ajar. No items were taken from her home.

*1044 Aurora Avenue*

On March 9, 2016, William Vinet returned to his residence at 1044 Aurora Avenue around 2:40 p.m. Upon entering his home, he noticed that "everything was scattered about" and that his pet dog was "going crazy." He found every room in his house ransacked, with broken glass all over, a mattress in the den and all of the lights in the house on. Items taken from the home included documents, a digital storage device, family heirlooms, jewelry, firearms, and ammunition.

*1417 Beverly Garden Drive*

That same day, Kevin Bird, accompanied by friends, returned home to 1417 Beverly Garden Drive after school. His mother, Lynne Bird, was out of town. When Bird opened the front door of his home, he "saw that something was off." He went to his parents' bedroom because the light was on, and he observed the room had been ransacked. His friends observed that the back door glass was shattered and pieces of broken glass were everywhere. Lynne Bird testified that "fifty years' worth of jewelry" and more than one television were taken from her home.

*1449 Poinsetta Drive*

On April 13, 2016, Maureen Dolese was informed by her daughter, Katherine, that her home at 1449 Poinsetta Drive had been broken into. When she returned home, she discovered one of her entry doors was broken and glass was on the floor. She also found that her bedroom and bathroom had been ransacked. All of her jewelry and all of her extra sets of keys, including her house keys and a key to her daughter Katherine's 2011 Hyundai Tucson car had been taken. Ms. Dolese subsequently changed the locks to her home. The morning after the burglary, Katherine's car was missing.

*3329 Metairie Heights*

Robert Whitaker returned to his home at 3329 Metairie Heights Avenue between 12:30 p.m. and 1:00 p.m. on the same day. Entering through a back yard gate, he walked toward his back patio, where he observed the glass in exterior French doors leading into the house was smashed. Inside the home, he found his bedroom ransacked and observed that prescription medications and his wife's jewelry were missing.

*937 Elmeer Drive*

Also on April 13, 2016, Dean Pigeon returned home to 937 Elmeer Drive around 1:15 p.m. Entering through the front door, he found broken glass from the back door "all over." He described his bedroom and bathroom as "completely destroyed." Items removed from the Pigeon home included a computer, jewelry, and prescription medications.

*3708 Ridgeway Drive*

Later that same afternoon, Henry George returned home to 3708 Ridgeway Drive around 5:00 p.m. After entering his residence from the back yard, he noticed broken glass from a French entry door. He found the living room, home office, and bedrooms ransacked. According to Mr. George, items missing were computer equipment, gaming consoles, jewelry, and a fifty-five-inch television.

*4604 Marseille Street*

Finally, on that same day, Caroline Bartolotta returned home to 4604 Marseilles Street after work. Inside her home, she observed the screen door was ajar, the back door glass was broken, and her master bedroom had been ransacked. No items were taken from her home.

*Theft: 2011 Hyundai Tucson*

On the day after her mother's house was burglarized, Katherine Dolese, discovered her 2011 Hyundai Tucson was missing from her residence at 1457 Poinsetta Drive. Keys to the car were stolen from Maureen Dolese's home on April 13, 2016. The car was located and returned four days later. Video surveillance recordings from the area depicted two people tossing items from the car, then fleeing. When the car was returned by law enforcement, Katherine observed the license plate was bent.

*The Investigation*

Detective Darrin Parent and Sergeant David DeRoche, with the Jefferson Parish Sheriff's Office ("JPSO"), investigated the eight 2016 Metairie burglaries. No one was caught on foot in connection with the burglaries and the detectives did not have any named suspects. The only information the detectives had to work from was security video footage in the areas of the Dorrington, Beverly Gardens and Aurora burglaries which showed two white males driving a distinctive gray late model Ford F-150. DNA analysis of a glove recovered from the house on Ridgeway was not informative.

Seeking information, the detectives distributed a "wanted" bulletin throughout the JPSO and the local media. Following the media release, a Baton Rouge detective contacted the Jefferson Parish detectives to advise that they were investigating four home burglaries in the Baton Rouge area, including one aggravated burglary involving the same truck. On April 14, 2016, Sergeant DeRoche was advised that DNA belonging to Ernst and defendant was found on a water bottle connected to the aggravated burglary in Baton Rouge.

During the investigation, the detectives also gathered information connecting defendant and Ernst to each other from Dustin Johnson (Johnson). At the time, Johnson was in the custody of the Jefferson Parish Sheriff in connection with the 2015 Metairie burglaries. He was also a suspect in a Mandeville, Louisiana home burglary that occurred in 2015. Detectives listened to Johnson's jail calls to obtain information about others involved in those crimes and the whereabouts of stolen property. Among the surveilled calls were conversations with a person referred to as "Mark." Those conversations revealed "Mark" was particularly interested in Johnson's case and paid for his legal counsel. "Mark" was later identified to be defendant and the phone number for "Mark" was registered to Ernst.

In addition to the above, tracking information from a Mac Pro computer taken from the George's residence on Ridgeway led detectives to a Metairie apartment where Jason Meserole (Meserole) and Lauren Plaisance (Plaisance) were living. Plaisance allowed detectives into the apartment, where the stolen computers and camera equipment were located and identified.

Meserole returned to the apartment approximately a half hour later. Upon his arrival, detectives questioned Meserole about the stolen computers. He reported that Ernst brought him the computers to "clean them in full." Detectives also questioned Plaisance, who provided the names of "Brian Ernst" and "Ray." While stating she did not know them well, Plaisance reported knowing "Ray" through Ernst and that "Ray" was dating Ernst's sister, Malbrough. Plaisance identified Ernst and defendant in photo lineups and Meserole provided the officers with Ernst's address. Thereafter, warrants were obtained for the arrest of defendant and Ernst, as well as to search Ernst's residence.

*Ernst Arrest*

On April 14, 2016, detectives went to Ernst's residence to locate stolen laptops. After searching the apartment, the detectives seized seventy-four items from Ernst's bedroom, including firearms, gaming devices, assorted prescription medication bottles, televisions, computer equipment, and an inventory ledger.

Ernst was arrested that same day. He would identify defendant as his accomplice in the 2016 Metairie burglaries. Ernst described the vehicles used in the burglaries and how they came to possess each of them. He also described the clothing worn during commission of the crimes. Further, information provided by Ernst led law enforcement to the gray F-150 truck depicted in video surveillance from the Metairie burglaries. Inside the truck, detectives found a dresser drawer

taken from the Poinsetta residence. Ernst would enter into a plea agreement with the State.

*Apprehension of Defendant*

During the investigation, detectives learned that defendant resided on Hellenbirg Street in Covington, Louisiana. On April 20, 2016, a search warrant for defendant's residence was obtained, and Sergeant DeRoche assisted St. Tammany detectives in conducting the search. Neither defendant nor Malbrough were home at the time. Thereafter, Sergeant DeRoche contacted the U.S. Marshals' task force to assist in their search for defendant. U.S. Marshals Agent DiGiovanni located defendant and Malbrough in a Metairie Road parking lot. DiGiovanni observed them moving items between their respective vehicles until a marked Jefferson Parish Sheriff's Office unit, driven by Detective Dupuis, appeared and stopped in the middle of the road. Thereafter, defendant fled in the F-150 truck, and Marlbrough fled in a Lexus automobile. Detective Dupuis activated the lights and siren of his marked JPSO unit and initiated pursuit of the two vehicles. Detective Dupuis followed the two vehicles which were traveling between sixty-five to seventy miles per hour in a twenty mile-per-hour zone and running multiple stop signs. When the chase reached Metairie Lawn, defendant abandoned the still-moving truck and got into the Lexus being driven by Malbrough. The Lexus raced off with Detective Dupuis in pursuit until Metairie Heights and the South I-10 Service Road, where defendant was apprehended.

A second search of defendant's residence was conducted based on information provided by Malbrough following her arrest. Located inside the residence were stolen items from the Mandeville burglaries, as well as from the burglaries of the Beverly Gardens and Aurora homes. Also discovered were flash

drives containing photographs of firearms matching the inventory list recovered from Ernst's residence.

In the course of their investigation into the Metairie burglaries, law enforcement officers collected information regarding other crimes involving defendant. Beyond implicating defendant in the 2016 Metairie burglaries, Ernst provided law enforcement with details about the Baton Rouge home burglaries he and defendant committed that same year. Johnson also began cooperating with law enforcement after Ernst's arrest, admitting to committing a 2015 Mandeville home burglary and multiple Metairie home burglaries in 2015. He named defendant as his accomplice in each crime.

**ASSIGNMENTS OF ERROR**

In this appeal, defendant presents eight assignments of error. Two assignments of error are set forth in the appellant brief filed by counsel and six are contained in defendant's *pro se* appellant brief. *Pro Se* Assignment of Error Number One asserts that the evidence was insufficient to support defendant's convictions for simple burglary, theft, and aggravated flight. In counseled Assignments of Error Numbers One and Two, defendant asserts that the trial court erred in imposing an unconstitutionally excessive sentence and erred in denying defendant's motion to reconsider sentence. In *Pro Se* Assignments of Error Numbers Two, Four, Five and Six, defendant asserts that the trial court erred in its denial of a motion for new trial. Finally*, Pro Se* Assignment of Error Number Three contends that an incomplete trial transcript violates his constitutional right to a complete trial transcript.

*Sufficiency of Evidence*

In this assignment of error, defendant argues that the evidence was insufficient to support his convictions for simple burglary, theft, and aggravated flight. [3] Defendant argues the guilty verdicts were not supported by physical evidence.

The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. *State v. Mouton*, 16-673 (La. App. 5 Cir. 4/26/17), 219 So.3d 1244, 1254, *writ denied*, 17-1149 (La. 5/18/18), 242 So.3d 572. A post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilty. *State v. Lavigne*, 22-282 (La. App. 5 Cir. 5/24/23), 365 So.3d 919, 939, *writ not considered*, 23-1119 (La. 10/10/23), 370 So.3d 1086.

On February 7, 2022, defendant filed a counseled Motion for Post-Verdict Judgment of Acquittal. Therein, defendant asserted that the evidence did not reasonably permit a finding of guilty of simple burglary of an inhabited dwelling, theft, or aggravated flight from an officer. The motion was denied that same day.[4]

Appellate review of the denial of the motion for post-verdict judgment of acquittal is controlled by the standards set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v.*

---

[3] *Pro Se* Assignment of Error Number One.
[4] On appeal, defendant does not specifically argue that the trial judge erred in denying these motions.

*Virginia, supra*; *State v. Lane*, 20-181 (La. App. 5 Cir. 1/27/21), 310 So.3d 794, 804. Under the *Jackson* standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. *State v. McKinney*, 20-19 (La. App. 5 Cir. 11/4/20), 304 So.3d 1097, 1103.

In its determination of whether any rational trier of fact would have found the defendant guilty, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. *State v. Hutchinson*, 22-536 (La. App. 5 Cir. 8/18/23), 370 So.3d 769, 781. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. *Id*. Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Tate*, 22-570 (La. App. 5 Cir. 6/21/23), 368 So.3d 236, 244.

Circumstantial evidence used to prove the commission of an offense must exclude every reasonable hypothesis of innocence in order to convict. *State v. Gatson*, 21-156 (La. App. 5 Cir. 12/29/21), 334 So.3d 1021, 1034. This is not a separate test from the *Jackson* standard, but rather provides a helpful basis for determining the existence of reasonable doubt. *Id*. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. *Tate*, *supra.*

Defendant was convicted of eight counts of simple burglary of an inhabited dwelling. [5] On appeal, defendant does not challenge the evidence that the

---

[5] Counts one through four and six through nine of the bill of information.

burglaries occurred. Rather, he argues the evidence does not support his participation in those crimes. Defendant points out that the glove found at 3708 Ridgeway Drive did not have his nor Ernst's DNA and that the fingerprint recovered at 1604 Marseilles Drive belonged to neither him nor Ernst.

At trial, Ernst and Malbrough presented testimonial evidence of defendant's participation in the 2016 Metairie burglaries. The testimony of one witness, if believed by the trier of fact that is without internal contradiction or irreconcilable conflict with physical evidence is sufficient to support a conviction. *Tate*, *supra*. Witness testimony in this case did not contradict any physical evidence. Ernst testified that he committed each burglary with defendant. Items from two of the homes - Aurora and Beverly Gardens - were found in defendant's home. A gray F-150 truck connected to defendant and Ernst was linked to the burglaries at Dorrington, Aurora, and Poinsettia home. Items from the homes on Aurora, Ridgeway, Beverly Gardens, Metairie Heights, and Elmeer were found in Ernst's residence. The presence of the items in Ernst's residence supports testimonial evidence that Ernst and defendant committed the burglaries together. Malbrough, defendant's live-in girlfriend at the time, also testified that defendant committed burglaries with Ernst. Additionally, Plaisance and Meserole connected defendant to items taken from the residences. Finally, surveillance connected a truck stolen by defendant to several of the burglaries. The record reflects that the testimonial evidence supported all eight burglary convictions.

Upon review, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support defendant's conviction as to each count of simple burglary of an inhabited dwelling.

Defendant was also convicted and sentenced for theft valued at five thousand dollars or more but less than twenty-five thousand dollars in violation of

La. R.S. 14:67(B)(2).[6] The thing stolen was a 2011 Hyundai Tucson owned by Katherine Dolese. On appeal, defendant contends there was insufficient evidence of the car's value to support the conviction for theft between $5,000.00 and $25,000.00.

For the crime of theft, the State is required to prove that the defendant misappropriated or took a thing of value that belonged to another, without the consent of the owner, and that he had the intent to deprive the owner permanently of that which was misappropriated or taken. La. R.S. 14:67. *See State v. Smith*, 09-36 (La. App. 5 Cir. 4/28/09), 13 So.3d 570, 575. Defendant does not challenge the sufficiency of the evidence satisfying those elements of the crime. Rather, defendant argues on appeal that the State failed to present sufficient evidence of the car's value at the time of the theft. In addition to the three elements referred to above, the State is also required to prove the value of the stolen property at the time of the theft because the determination of the severity of the offense and the degree of punishment upon conviction depends upon the value of the stolen property. *State v. Ramsdell*, 06-644 (La. App. 5 Cir. 12/27/06), 949 So.2d 508, 511; *State v. Trosclair*, 19-833 (La. App. 3 Cir. 6/24/20), 299 So.3d 704, 715, *writ denied*, 20-949 (La. 1/20/21), 308 So.3d 1162 (citing *State v. Smith*, 94-901 (La. App. 5 Cir. 8/28/96), 680 So.2d 95, 98).

The value of the stolen property may be established by testimony by the owner alone if it is clear and uncontradicted. *State v. Richey*, 13-228 (La. App. 5 Cir. 10/30/13), 128 So.3d 1143, 1150. Qualifying the owner as an expert is not required before testifying as to the value of the thing owned by him. *Id*. At trial, Katherine Dolese testified to owning a 2011 Hyundai Tucson in April 2016, that

---

[6] Count five.

she did not give anyone permission to take her car, and denied knowing defendant or Ernst. When asked how much the car cost, she replied, "twenty-two thousand."

In addition to hearing Katherine Dolese's testimony, the jury viewed photographs and a video showing the stolen Tucson. In describing the photographs, Katherine stated, "This is -- these are photos of my vehicle parked in a place that I was not allowed to go to. And this is my car. And the last photo is a picture of the plates. And they're bent as if someone were trying to remove them, which I did not do that." There was no further testimony regarding the value or condition of the vehicle.

We find that the jury was presented with sufficient evidence that the vehicle was worth at least five thousand dollars. In *State v. Bruff*, 91-703 (La. App. 5 Cir. 3/31/92), 597 So. 2d 122, *writ denied*, 92-1224 (La. 7/1/92), 600 So.2d 676, the defendant was found guilty of unauthorized use of a vehicle valued in excess of $1,000. On appeal, the defendant argued that the State did not prove the value of the vehicle. At trial, the State introduced evidence that the defendant was not authorized to drive off the car lot with a used 1988 Ford Taurus, and it introduced photographs of the Taurus. This Court highlighted that the photographs showed the body of the vehicle, the engine performed well enough to drive, and the jurors could have reasonably concluded that the Taurus was worth more than $1,000. *See also Ramsdell*, 949 So.2d at 512, where this Court held that although the owner did not testify as to the value of the truck, a reasonable jury could have concluded that the value of the nine-year-old truck exceeded five hundred dollars based on the truck's condition as depicted in the videotape.

Here, the stolen vehicle was approximately five years old. At some point, the vehicle cost twenty-two thousand dollars. The photographs of the vehicle showed that the exterior was in a very good condition. Further, the vehicle was

drivable at the time it was taken. As such, we find that based on the evidence presented, a reasonable jury could have concluded that the vehicle was worth at least five thousand dollars at the time of the theft.

Finally, the defendant was convicted of one count of aggravated flight from an officer. [7] At the time of the offense, La. R.S. 14:108.1 stated, in pertinent parts:

***

C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop …, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle or marked police watercraft.

D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts:

(1) Leaves the roadway or forces another vehicle to leave the roadway.

(2) Collides with another vehicle or watercraft.

(3) Exceeds the posted speed limit by at least twenty-five miles per hour.

(4) Travels against the flow of traffic or in the case of watercraft, operates the watercraft in a careless manner in violation of R.S. 34:851.4 or in a reckless manner in violation of R.S. 14:99.

(5) Fails to obey a stop sign or a yield sign.

(6) Fails to obey a traffic control signal device.

On appeal, defendant argues there was insufficient evidence for the jury to convict him of aggravated flight from an officer because law enforcement officers lacked probable cause or a reasonable suspicion to stop his truck on April 20, 2016. Defendant relies on *State v. Harris*, 52,370 (La. App. 2 Cir. 11/14/18), 261 So.3d 149, where the second circuit reversed the defendant's conviction for

---

[7] Count ten of the bill of information.

aggravated flight because the State failed to prove that the officers had reasonable grounds to believe the defendant committed an offense prior to the chase.

In the instant case, evidence presented at trial established that defendant was the subject of an arrest warrant on April 20, 2016. Officers identified defendant in a Metairie Road parking lot. Defendant departed the lot after observing law enforcement positioned nearby. Thus, we find the argument that law enforcement did not have reasonable grounds to stop defendant's vehicle is unsupported by the evidence.

Defendant also argues the pursing law enforcement officer did not activate the SUV's emergency siren or lights. Supporting this argument are the defendant's testimony and police dispatch logs. Conversely, Agent DiGiovanni testified that Detective Dupuis initiated his lights and sirens and pursued both vehicles. Detective Dupuis testified that he initiated pursuit with his red lights and siren activated, which remained on during the entire pursuit. He acknowledged sirens could not be heard in audio recordings of his radio transmission, and explained that the siren can be turned on and off by radio transmissions because he would not be heard over the radio when sirens are activated. Further, Malbrough testified that the white SUV following them had lights and sirens on.

Multiple witnesses testified at trial that Malbrough and defendant drove at excessive speeds while disregarding stop signs as they fled from an officer with the lights and sirens of his marked police unit initiated. Detective Dupuis testified that the two vehicles "ran a stop sign at Metairie Lawn and Fagot at a high rate of speed" and then ran another stop sign, estimating their speed to be sixty-five or seventy miles per hour in a twenty mile-per-hour zone. In her testimony, Malbrough admitted to driving between sixty and seventy miles per hour and that they did not stop at stop signs or red lights.

Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could find that the essential elements of the crime of aggravated flight from an officer were proven beyond a reasonable doubt by the State.

### *Excessive Sentence and Denial of Motion to Reconsider Sentence*

Counseled assignments of error number one and two are related and are discussed together.[8] Defendant argues that his sentences totaling sixty-eight years at hard labor are unconstitutionally excessive. Defendant contends that the charges, except for the count of aggravated flight from an officer, were non-violent property crimes. Also supporting this argument are references to Ernst's sentence and the plea deal defendant was offered before trial. Defendant asserts that the sentences should be vacated, and the matter remanded for resentencing.

"Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." La. C.Cr.P. art. 881.1(E). A motion for reconsideration of sentence "shall be oral at the time of sentence or shall be in writing thereafter and shall set forth the specific grounds on which the motion is based." La. C.Cr.P. art. 881.1(B).

One day after sentencing in this case, defendant filed a counseled Motion for Reconsideration of Sentence, wherein he asserted "that the sentence imposed is excessive, that the sentence imposed be reconsidered, and that a lower sentence more in keeping with fairness and state and federal constitutional standards be

---

[8] Counseled Assignment of Error Number One and Counsel Assignment of Error Number Two.

imposed." On February 11, 2022, defendant filed a *pro se* Motion to Note Formal Objection wherein he asked that the judge note his objection to the sentence imposed as being excessive and to the multiple bill filed by the State. Also on February 11, 2022, the judge addressed the motion to reconsider at a hearing. Defendant requested the trial court impose the sentence of eight years that was offered in plea discussions. The trial judge denied the motion to reconsider sentence, and defense counsel objected to the ruling.

This Court has held that when the consecutive nature of sentences is not specifically raised in the trial court, the issue is not included in the review for constitutional excessiveness, and the defendant is precluded from raising the issue on appeal. *State v. Rodgers*, 16-14 (La. App. 5 Cir. 10/26/16), 202 So.3d 1189, 1200, *writs denied*, 16-2189 (La. 9/15/17), 225 So.3d 479, and 16-2093 (La. 1/29/18), 235 So.3d 1104. *See also State v. Barber*, 19-235 (La. App. 5 Cir. 10/23/19), 282 So.3d 404, 413, where this Court found that the defendant's failure to challenge the consecutive nature of his sentences below limited this Court to a bare review for constitutional excessiveness.

Cruel and unusual punishment is prohibited by the Eighth Amendment to the United States Constitution as well as Article I, § 20 of the Louisiana Constitution. Even when it is within the applicable statutory range, a sentence is unconstitutionally excessive if it is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime and makes no measurable contribution to acceptable goals of punishment. *State v. Bourgeois*, 22-418 (La. App. 5 Cir. 4/26/23), 361 So.3d 1138, 1147. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *Barber*, *supra*.

The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *State v. Diaz*, 20-381 (La. App. 5 Cir. 11/17/21), 331 So.3d 500, 520, *writ denied*, 21-1967 (La. 4/5/22), 335 So. 3d 836.  A trial judge is in the best position to consider the aggravating and mitigating circumstances of a particular case and, therefore, is given broad discretion when imposing a sentence.  *Id.* at 519-20. The review of sentences under La. Const. art. 1, § 20 does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is most appropriate in a given case.  *State v. Corea-Calero*, 22-117 (La. App. 5 Cir. 12/28/22), 355 So.3d 697, 701.  In reviewing a sentence for excessiveness, the reviewing court shall consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock the court's sense of justice, while recognizing the trial court's wide discretion.  *State v. Hankton*, 20-388 (La. App. 5 Cir. 7/3/21), 325 So.3d 616, 623, *writ denied*, 21-1128 (La. 12/7/21), 328 So.3d 425.  The relevant question on appellate review is "whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate." *State v. Aguliar-Benitez*, 21-174 (La. 10/10/21), 332 So.3d 618, 620.

Three factors are considered in reviewing a trial court's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *State v. Hayman*, 20-323 (La. App. 5 Cir. 4/28/21), 347 So.3d 1030, 1043. However, there is no requirement that specific matters be given any particular weight at sentencing.  *State v. Bridgewater*, 22-517 (La. App. 5 Cir. 4/26/23), 362 So.3d 998, 1010.  An appellate court cannot set aside a sentence as excessive absent a manifest abuse of discretion.  *Id.*

In this case, defendant was convicted of eight counts of burglary, one count of theft valued at five thousand dollars but less than twenty-five thousand dollars, and one count of aggravated flight from an officer. At the time of the offenses,[9] La. R.S. 14:62.2 provided, "Whoever commits the crime of simple burglary of an inhabited dwelling shall be imprisoned at hard labor for not less than one year, without benefit of parole, probation or suspension of sentence, nor more than twelve years."[10] On each count of simple burglary, defendant was sentenced to six years imprisonment at hard labor, with the first year to be served without the benefit of parole, probation, or suspension of sentence.

Defendant stipulated to being a fourth-felony offender as to count ten. At the time of the underlying offense committed on April 20, 2016,[11] La. R.S. 15:529.1 stated that if the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life. Consequently, defendant faced an enhanced sentencing range of twenty years imprisonment to life imprisonment. The judge imposed an enhanced sentence of twenty years imprisonment at hard labor, the statutory minimum sentence.

---

[9] The law in effect at the time of the commission of the offense is determinative of the penalty imposed. *State v. Sugasti*, 01-3407 (La. 6/21/02), 820 So.2d 518, 520.

[10] In *State v. Ordon*, 18-295 (La. App. 5 Cir. 11/7/18), 259 So.3d 620, 628 n.15, this Court addressed the duration of the restriction of benefits under the statute for simple burglary of an inhabited dwelling. This Court explained that in *State v. Boowell*, 406 So.2d 213, 215-16 (La. 1981), the Louisiana Supreme Court held that, due to the ambiguity of La. R.S. 14:62.2, only the first year of a sentence imposed for simple burglary of an inhabited dwelling may be imposed without benefits.

[11] It is well settled that a "defendant should be sentenced in accord with the version of La. R.S. 15:529.1 [the multiple offender statute] in effect at the time of the commission of the charged offense." *Bourgeois*, 361 So.3d at 1149 (quoting *State v. Parker*, 03-924 (La. 4/14/04), 871 So.2d 317, 326).

Much of defendant's argument below and on appeal focuses on a comparison of sentences imposed after trial to the plea offers before trial. He also points to the sentence Ernst received under a plea agreement with the State. Defendant does not address the factors for reviewing a trial court's sentencing. *See State v. Hayman, supra.* Rather, defendant contends the exercise of his right to go to trial was the reason for his comparatively longer prison sentence.

This Court has recognized that when a defendant chooses not to accept the plea bargains offered by the State, he takes the risk of a greater penalty upon a jury conviction. *State v. Lasalle*, 22-577 (La. App. 5 Cir. 8/18/23), 370 So.3d 521, 532. Particularly, the risk of penalty becomes greater upon jury conviction because the court has the benefit of witness testimony, allowing it to more fully consider the severity of the offense. *Id*; *State v. Johnson*, 11-375 (La. App. 5 Cir. 12/28/11), 83 So.3d 1116, 1123, *writ denied*, 12-296 (La. 6/22/12), 91 So.3d 966.

Regarding defendant's complaint that Ernst received a lesser sentence, there is no requirement that co-defendants be sentenced equally. *State v. Napoleon*, 01-1222 (La. App. 5 Cir. 2/26/02), 811 So.2d 980, 984. While co-defendants convicted of the same crime need not be sentenced equally, even where the co-defendants come from similar backgrounds and might be similar in other respects, disparity of sentences is another factor to be weighed by this Court in assessing an excessiveness claim. *See State v. Smith*, 433 So.2d 688, 698 (La. 1983). Defendant's lack of remorse was noted by the trial court at sentencing. Further, Ernst was sentenced pursuant to a plea agreement. As such, the disparity in Ernst's and defendant's sentences was not improper.

Additionally, we consider the nature of the crimes, the nature and background of the offender, and the sentences imposed for similar crimes by the same court and other courts. In *State v. Jacobs*, 10-292 (La. App. 3 Cir. 10/6/10),

48 So.3d 1218, 1225, the third circuit stated, "Simple burglary of an inhabited dwelling is one of those offenses that the law considers more serious than others, as evidenced by the range of incarceration sentences available." The court provided, "[A]lthough commission of the offense does not necessarily involve physical injury or even physical danger to the victim, it constitutes an invasion of an individual's home–a place where he or she should be able to feel totally safe from the evils of the world."

Here, as acknowledged by the trial judge at sentencing, each count impacted the lives of a different family. One victim, Mrs. Vinet, gave a victim impact statement wherein she detailed the physical losses and emotional damage she suffered from defendant's burglary. She explained that defendant took her sense of safety and described the life changes she has made in light of defendant's actions. Many of the victims did not recover all of their stolen property.

As to the aggravated flight from an officer, we consider the fact that defendant involved his girlfriend in the chase endangering her as he drove well over the speed limit and ignored several stop signs. Anytime an individual chooses to flee from the police and leads officers on a high-speed pursuit, it is dangerous and potentially life-threatening conduct. *See State v. Williams*, 55,290 (La. App. 2 Cir. 9/27/23), 2023 WL 6279944. Further, testimony at trial indicated that defendant exited his moving vehicle and left it running so that it would cross paths with the pursuing officer's vehicle.[12] Such an act appears to have increased the danger to the officer and any nearby persons or property.

Regarding the nature and background of the offender, we note that the defendant was approximately thirty years old and that he had an extensive criminal

---

[12] Additionally, State's Exhibit 82, which is an arrest register for defendant, described that some residents were walking their dogs at the time of the aggravated flight.

history, including several convictions for similar offenses. The judge at sentencing described defendant as a career criminal whom he believed would recidivate.

Additionally, the trial judge at sentencing observed that defendant continued to deny any involvement in the charged offenses and did not show any remorse. Lack of remorse is a permissible consideration for sentencing determinations by a trial court. *State v. Leach*, 22-194 (La. App. 5 Cir. 12/28/22), 356 So.3d 531, 546.

Finally, we look to similar sentences imposed for similar crimes by this Court and other courts. As to the counts of simple burglary of an inhabited dwelling, we find that a six-year sentence has been upheld in another case. In *State v. Thomas*, 18-981 (La. App. 3 Cir. 6/5/19), 2019 WL 2373898 (unpublished opinion; not designated for publication), *writ denied*, 19-1014 (La. 12/10/19), 285 So.3d 487, the defendant pled guilty to a reduced charge of simple burglary of an inhabited dwelling. The court reviewed the six-year sentence for excessiveness and affirmed it. Additionally, harsher sentences for simple burglary of an inhabited dwelling have been upheld.[13]

Considering that the underlying statute for aggravated flight from an officer and the multiple offender statute have changed several times and that there are no cases that match the circumstances of this case, we turn to the following for guidance. In *State v. Hampton*, 50,561 (La. App. 2 Cir. 5/18/16), 195 So.3d 548, *writ denied*, 16-1181 (La. 5/26/17), 221 So.3d 854, the second circuit upheld a

---

[13] *See* the following cases where the defendants argued that their sentences were excessive and the courts upheld those sentences. *State v. Herrington*, 49,323 (La. App. 2 Cir. 11/19/14), 152 So.3d 202 (twelve years imprisonment for simple burglary of an inhabited dwelling); *State v. Henderson*, 48,806 (La. App. 2 Cir. 2/26/14), 136 So.3d 299, *writ denied*, 14-687 (La. 10/31/14), 152 So.3d 151 (ten-year sentences for simple burglary of an inhabited dwelling); *Jacobs, supra* (ten-year sentence for simple burglary of an inhabited dwelling); *State v. Howard*, 09-281 (La. App. 3 Cir. 11/4/09), 2009 WL 3637065 (unpublished opinion; not designated for publication), *writ denied*, 09-2531 (5/7/10), 34 So.3d 859 (seven years at hard labor for two counts of simple burglary of an inhabited dwelling); *State v. Baker*, 08-898 (La. App. 3 Cir. 2/4/09), 3 So.3d 666 (ten-year sentences for simple burglary of an inhabited dwelling); *State v. Durham*, 43,558 (La. App. 2 Cir. 10/15/08), 996 So.2d 642 (nine-year sentence for burglary of an inhabited dwelling); *State v. Alsup*, 42,636 (La. App. 2 Cir. 10/24/07), 968 So.2d 1152, *writ denied*, 07-2252 (La. 4/25/08), 978 So.2d 363 (eight-year sentence for simple burglary of an inhabited dwelling).

sentence of thirty years where the range faced by the defendant was twenty years to life imprisonment. The court concluded that considering his long criminal history, the sentence neither shocked its sense of justice, nor was it disproportionate considering the number of past offenses committed. The court further explained that although several of the offenses were minor motorist violations, the defendant demonstrated a continuing, flagrant disregard for law his entire adult life.

In *State v. Tyrney*, 22-949 (La. App. 1 Cir. 3/16/23), 363 So.3d 550, *writ denied*, 23-552 (La. 11/21/23), 373 So.3d 460, under the multiple offender statute in effect at the time, the defendant received the mandatory enhanced sentence of twenty years imprisonment as a fourth-felony offender for aggravated flight from an officer. In considering whether the sentence was excessive, the first circuit found the sentence was not grossly disproportionate to the severity of the offense, stating, "It is of no moment that the defendant's four prior convictions were not for crimes of violence."

Here, in light of the foregoing, we find that the trial judge did not abuse his discretion in imposing the sentences and that this assignment of error lacks merit.

### Denial of Motion for New Trial: Erroneous Admission of 404(b) Evidence

In this assignment of error, defendant argues that he should have been granted a new trial because the La. C.E. art. 404(b) evidence presented during trial was improperly admitted, and that evidence led the jurors to declare guilt on a ground different from proof specific to the offenses charged.[14] On appeal, defendant argues that the evidence of the burglaries with Johnson and the

---

[14] Pro se Assignment of Error Number Two.

burglaries in Baton Rouge with Ernst should not have been admitted at trial and admission of that evidence was not harmless.

On April 3, 2019, the State filed State's Notice of Intent to Use Other Crimes Evidence Pursuant to Louisiana Code of Evidence Article 404(B) and/or the Res Gestae Doctrine. The State explained that it wanted to present evidence of "prior burglaries, crimes committed contemporaneously with the charged burglaries, crimes committed in advance of the charged burglaries (which were committed to effect the charged burglaries), and domestic abuse perpetrated by the defendant." The State then detailed the numerous acts. This included charges of four burglaries in June and July of 2015 committed with Johnson, two car burglaries committed in February 2016, and one carjacking, unauthorized use of a motor vehicle, and six burglaries in Baton Rouge between March and April of 2016. In response, defendant filed a *pro se* Motion in Opposition to State's Notice of Intent to Use Other Crimes Evidence Pursuant to Louisiana Code of Evidence Article 404(B) and/or the Res Gestae Doctrine. Defendant argued that the evidence sought to be introduced by the State was not relevant and that the probative value was substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury. He suggested that admitting the evidence would result in "numerous trials inside the current trial." The State's notice was addressed on June 10, 2019. Regarding contemporaneous crime and/or acts, the trial court ruled that evidence of such crimes and/or acts would be admitted, subject to cross-examination.

The fundamental rule in Louisiana governing the use of evidence of other crimes, wrongs, or acts is that such evidence is not admissible to prove that the accused committed the charged crime because the defendant has committed other such crimes in the past. *State v. Williams*, 09-48 (La. App. 5 Cir. 10/27/09), 28

So.3d 357, 363, *writ denied*, 09-2565 (La. 5/7/10), 34 So.3d 860. *See also* La. C.E. art. 404(B)(1). Generally, evidence of other crimes, wrongs, or acts is inadmissible because of the "substantial risk of grave prejudice to the defendant." *State v. Ard*, 20-221 (La. App. 5 Cir. 4/28/21), 347 So.3d 1046, 1055.

However, evidence of prior crimes may be admitted if the State establishes an independent relevance aside from proving the defendant's criminal character. *State v. Brown*, 17-348 (La. App. 5 Cir. 12/20/17), 235 So.3d 1314, 1323, *writ denied*, 18-158 (La. 11/5/18), 256 So.3d 276, *cert. denied*, -- U.S. --, 139 S.Ct. 2033, 204 L.Ed.2d 233 (2019). Evidence of prior crimes, wrongs, or acts is admissible *res gestae* evidence when they are so nearly connected to the charged offense that the State could not accurately present its case without reference to them. *State v. Maize*, 16-575 (La. App. 5 Cir. 6/15/17), 223 So.3d 633, 648, *writ denied*, 17-1265 (La. 4/27/18), 241 So.3d 306. Additionally, Louisiana jurisprudence has long sanctioned the use of other crimes evidence to show *modus operandi*, where the prior crime is so distinctively similar to the one charged, especially in terms of time, place, and manner of commission, that one may reasonably infer that the same person is the perpetrator in both instances. *State v. Rodney*, 19-195 (La. App. 5 Cir. 10/23/19), 282 So.3d 395, 403. Further, evidence of other crimes may be admissible if the evidence is relevant to show motive, i.e., to show that the defendant had a reason to commit the crime with which he is charged. *State v. Leday*, 11-1022 (La. App. 5 Cir. 6/28/12), 97 So.3d 501, 506, *writ denied*, 12-1765 (La. 3/1/13), 108 So.3d 788.

Even when admissible under La. C.E. art. 404(B)(1), the other crimes evidence must tend to prove a material fact at issue or to rebut a defendant's defense. *Ard*, *supra*. That probative value must outweigh its prejudicial effect. La. C.E. art. 403; *Maize*, *supra*. In as much as any inculpatory evidence is prejudicial,

introduction of probative evidence of prior misconduct is limited only when it is unduly and unfairly prejudicial. *Rodgers*, 202 So.3d at 1201. The term "unfair prejudice," as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the fact-finder into declaring guilt on a ground different from proof specific to the offense charged. *State v. Thomas*, 19-582 (La. App. 5 Cir. 7/29/20), 300 So.3d 517, 528, *writ denied*, 20-1503 (La. 3/2/21), 311 So.3d 1053.

The burden is on the defendant to show that he was unfairly prejudiced by the admission of other crimes evidence. *Gatson*, 334 So.3d at 1038. A trial court's ruling on admissibility of evidence pursuant to La. C.E. art. 404(B)(1) will not be disturbed unless it is found to be an abuse of discretion. *Id*.

If the trial court has been found to abuse its discretion in allowing other crimes evidence, the erroneous admission is subject to a harmless error analysis. *Gatson*, 334 So.3d at 1039. Analysis of harmless error requires a determination as to whether the guilty verdict actually rendered in the trial was surely unattributable to the error. *State v. Massey*, 11-358 (La. App. 5 Cir. 3/27/12), 97 So.3d 13, 29, *writ denied sub nom. State ex rel. Massey v. State*, 12-993 (La. 9/21/12), 98 So.3d 332.

On appeal, defendant argues that the judge only permitted the evidence of other crimes or wrongs because the State represented that it would call detectives as witnesses subject to cross-examination by the defendant. Defendant also argues that the Baton Rouge incident and the burglaries committed with Johnson were not sufficiently similar to the charged burglaries as to warrant their admission.

In review of the record, even if there was an error in admitting the evidence, it was harmless. Evidence of defendant's guilt for the crimes of burglary, theft, and aggravated flight from an officer was not enhanced by admitting evidence of

his roles in other crimes. Ernst testified to committing the burglaries with defendant. Malbrough testified that her brother, Ernst, and defendant committed burglaries together and that defendant kept items taken from the burglaries in their house. She also testified to being with defendant as they fled from law enforcement. Additionally, items from the burglaries were found by law enforcement in Ernst's and defendant's homes. Moreover, the jury was given a limiting instruction as to the other crimes evidence admitted. Based on the foregoing, we find that the verdict was surely unattributable to admission of the other crimes evidence. Therefore, we find that this assignment lacks merit.

### Incomplete Transcript: Violation of Constitutional Rights

In this assignment of error, defendant argues that the missing portions of the trial transcript are in violation of his constitutional right to a complete trial transcript where prosecutorial misconduct has been omitted. [15] Defendant argues that the transcript of the State's rebuttal closing argument was altered. Citing his own statements at sentencing as support, defendant contends that an accurate transcript would have shown prosecutorial misconduct and ineffective assistance of counsel. Defendant further contends that the State instructed the jury to disregard evidence that was not favorable to the State and that contradicted trial testimony.

Louisiana Constitution Article I, § 19 guarantees defendants a right of appeal based upon a complete record of all evidence upon which the judgment is based. In felony cases, the clerk or court stenographer shall record all the proceedings, including the examination of witnesses, statements, rulings, orders and charges by the court, and objections, questions, statements, and arguments of counsel. La. C.Cr.P. art. 843; *State v. Sly*, 23-60 (La. App. 5 Cir. 11/2/23), 2023 WL 7211074. The trial judge is duty-bound to see that the court reporter makes a

---

[15] *Pro se* Assignment of Error Number Three.

true, complete, and accurate record of the trial. *State v. Smith*, 54,510 (La. App. 2 Cir. 11/8/23), 2023 WL 7370893. The Article 843 reference to "objections" and "arguments" generally only applies to objections made in open court and the arguments of counsel in closing because only those objections and arguments rise to a level of materiality sufficient to invoke Article 843. *Id.* Also, Louisiana Revised Statute R.S. 13:961(C) states, in part, that in criminal cases tried in the judicial districts, the court reporter "shall record all portions of the proceedings required by law or the court and shall, when required by law or the court, transcribe those portions of the proceedings required, which shall be filed with the clerk of court in the parish where the case is being tried."

In the instant matter, we find that defendant's allegations are not supported in the record. He only refers to his own arguments at the time of his sentencing as supporting this assignment. We note that each transcript in the case, including the transcript of closing arguments, bore the certification of the court reporter that a true and correct transcript of proceedings was made. The transcript of the rebuttal closing argument flowed in a continuous, normal manner. Nothing in the record supports defendant's assertion that the rebuttal closing argument transcript was altered. As such, we find that this assignment of error lacks merit.

### Denial of New Trial:
### Ineffective Assistance of Trial Counsel

In this assignment of error, the defendant argues that he should be granted a new trial because his constitutional rights were violated through the ineffective assistance of trial counsel.[16] Defendant specifies five reasons his counsel was ineffective. First, he asserts counsel was ineffective for not impeaching Malbrough regarding whether the siren was active despite the defense's strategy being to

---

[16] *Pro Se* Assignment of Error Number Four.

prove that the siren was not activated. He argues that in her recorded statement, she said only the lights were activated. Next, defendant contends that counsel failed to subpoena a Baton Rouge detective regarding the Baton Rouge burglaries and that this violated the confrontation clause. He explains that the State said it would call Baton Rouge detectives to testify but did not. Counsel attempted to issue an instanter subpoena three days after the trial started. He argues that the Baton Rouge detective would have testified that the physical evidence contradicted Ernst's testimony and explained why the charges were dismissed. He provides that there was only one suspect in the Baton Rouge burglaries and that because Ernst confessed, only he committed them.

Further, defendant alleges that counsel was ineffective for failing to produce defendant's cell phone or its contents, which he asserts would have produced alibi evidence. He argues that counsel failed to investigate the evidence. Additionally, defendant avers that counsel was ineffective for failing to call expert witnesses concerning the DNA lab reports and findings. He provides that counsel did not call the reporting scientist regarding the glove found at the house on Ridgeway or the latent print examiner regarding the print at the house on Marseilles. He argues that the expert witnesses' testimony would have exonerated him as the second suspect because Ernst had already confessed. Finally, defendant contends that counsel was ineffective by failing to object to Detective DeRoche's testimony, to comments made by the prosecutor about the detective's truthfulness and failing to have the judge instruct the jury regarding the perjury. He alleges that the detective also committed perjury at the preliminary examination and lied in the arrest warrant.

A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana

Constitution of 1974. *State v. Karim*, 19-133 (La. App. 5 Cir. 9/9/20), 302 So.3d 1200, *writ denied*, 20-1185 (La. 1/12/21), 308 So.3d 713. Under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a conviction must be reversed if the defendant proves: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect. *Id.*

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Ledet*, 20-258 (La. App. 5 Cir. 1/27/21), 310 So.3d 810, 822. This Court has held that ineffectiveness of counsel, relating to trial strategy, cannot be determined by review of the record on appeal, but rather such a claim must be asserted by an application for post-conviction relief where the issue can be considered through an evidentiary hearing, if necessary, to determine, among other things, the defense strategy and whether the defendant himself was aware of the strategy and acquiesced in it. *State v. Starks*, 20-429 (La. App. 5 Cir. 11/3/21), 330 So.3d 1192, 1199.

In the instant case, defendant's claims raise the issue of counsel's trial strategy. Therefore, we decline to address this assignment of error on appeal and find the matter would be more properly addressed in an application for post-conviction relief requesting an evidentiary hearing, if warranted.

### *Denial of Motion for New Trial: Right to Present a Defense Denied*

In this assignment of error, defendant argues that he should be granted a new trial because his right to present a defense was denied when Verizon wireless was

not allowed to authenticate their cell phone records.[17]  Defendant appears to argue

that the record for his phone shows that his phone was not with Malbrough or at

the burglaries.  He contends that the phone records reflect when Malbrough was at

work and when she was home.  He states that the phone record is inconsistent with

her testimony that she could pick up work shifts.

Defense counsel argued to the trial court that Malbrough's Verizon wireless

records were alibi information.  The prosecutor interjected that if it was, the

defense did not provide official notice written in the record and that he could not

now call the witness at trial.  The judge agreed that the State was not given notice

of an alibi.

Under Uniform Rules-Courts of Appeal, Rule 2-12.4(B)(4), the Court may

consider as abandoned any assignment of error or issue for review which has not

been briefed.  *See also Diaz*, *supra*.  Restating an assigned error in brief without

argument or citation of authority does not constitute briefing.  *Id*. (citing *State v.*

*Marie*, 07-397 (La. App. 5 Cir. 11/27/07), 973 So.2d 780, 781).  As to this

assignment of error, we find that the defendant does not present legal argument and

fails to cite to any legal authority in support of his allegation.  Accordingly, we

consider this *pro se* assignment abandoned.

### *Denial for Motion for New Trial: Suppression of Exculpatory and Impeachment Evidence*

In this assignment of error, defendant argues that he should be granted a new

trial because the State suppressed exculpatory and impeachment evidence.[18]

Specifically, defendant alleges the State suppressed evidence of Ernst's 2021 arrest

for possession and criminal trespass, Detective DiGiovanni's dispatch records and

---

[17] *Pro Se* Assignment of Error Number Five.
[18] *Pro Se* Assignment of Error Number Six.

reports relating to the aggravated flight, and two cell phones, all of which he argues are exculpatory and impeachment evidence. Suppression of this evidence, defendant asserts, violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and prevented him from receiving a fair trial.

Defendant filed a *pro se* Memorandum In Support of Motion for New Trial nearly one year after his convictions. He argued that new and material evidence discovered after the trial would probably have changed the verdict. He asserted that the prosecution intentionally and in bad faith suppressed defense evidence which exculpated him and would have impeached the testimony of Ernst and Malbrough, which violated his due process rights and that the judge should grant him a new trial.

When a motion for new trial pursuant to La. C.Cr.P. art. 851(B)(3) is based on newly discovered evidence, four requisites must be met: (1) the evidence must have been discovered since the trial; (2) the failure to learn of the evidence at the time of trial was not due to defendant's lack of diligence; (3) the evidence must be material to the issues at trial; and (4) the evidence must be of such a nature that it would probably produce an acquittal in the event of a retrial. *State v. Nelson*, 09-807 (La. App. 5 Cir. 3/23/10), 39 So.3d 658, 665. Newly discovered evidence affecting only a witness' credibility as it is "merely cumulative or impeaching" is not an adequate basis for the grant of a new trial. *See State v. Lyles*, 03-141 (La. App. 5 Cir. 9/16/03), 858 So.2d 35, 52.

On February 15, 2023, the trial judge denied the motion for new trial. Addressing Ernst's 2021 offense, the trial judge found that defendant failed to meet his burden of proof that the information was withheld. The trial judge further explained that defendant failed to establish materiality of the evidence as the jury heard testimony of Ernst's lengthy criminal record. As to Ernst's 2022 alleged

offense, the trial judge explained that an offense occurring after trial could not have been impeachment material. As to defendant's argument about the cell phones, the judge found that defendant provided no proof and failed to state in what specific way exculpatory evidence existed. The judge specified that defendant did not "indicate the technology (text, voice mail, email) or any approximation of dates of allegedly exculpatory evidence" and that he did not provide transcripts or extracts of data from the phones. The judge concluded that the requirements of La. C.Cr.P. art. 851 were not met and that the defendant was not entitled to a new trial.

A trial court's ruling on a new trial motion will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Diaz*, 331 So.3d at 526. In *Brady v. Maryland*, 373 U.S. at 87, 83 S.Ct. at 1196-97, the United States Supreme Court held that the suppression by the State of evidence favorable to the accused after it receives a request for it violates a defendant's due process rights where the evidence is material to either the guilt or punishment, without regard to the good or bad faith of the prosecutors. *Diaz*, 331 So.3d at 528. The State's due process duty to disclose applies to both exculpatory and impeachment evidence. *Id*. Furthermore, it extends to both late disclosure and/or non-disclosure of favorable evidence that significantly impacts the defendant's opportunity to effectively present the evidence or compromises the trial's fundamental fairness. *State v. Brown*, 16-998 (La. 1/28/22), 347 So.3d 745, 834, *cert. denied*, -- U.S. --, 143 S.Ct. 886, 215 L.Ed.2d 404 (2023). In order to comply with *Brady*, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *State v. Chester*, 19-363 (La. App. 5 Cir. 2/3/21), 314 So.3d 914, 969, *writ denied*, 21-350 (La. 6/8/21), 317 So.3d 321.

Nevertheless, not every violation of the broad duty of disclosure constitutes a *Brady* violation. *Id.* *Brady* and its progeny do not establish a general rule of discoverability: the prosecutor does not breach the constitutional duty to disclose favorable evidence "unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Id.* In *Strickler v. Greene*, 527 U.S. 263, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999), the Supreme Court laid out the three components of a true *Brady* violation: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Brown*, 16-998, *supra*.

Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Williams*, 18-112 (La. App. 5 Cir. 11/7/18), 259 So.3d 563, 575, *writ denied*, 18-2038 (La. 4/22/19), 268 So.3d 295. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Id.* In *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the United States Supreme Court made clear that materiality is not determined item by item but by the cumulation of the suppressed evidence. Thus, even if each item by itself would not warrant a new trial, the accumulation may. *State v. Mangerchine*, 11-599 (La. App. 5 Cir. 2/14/12), 88 So.3d 621, 626.

As to defendant's argument regarding the U.S. Marshal dispatch recording, he appears to raise this issue for the first time on appeal. *Brady* challenges, like the one asserted in defendant's *pro se* brief, present fact-based judgments that cannot be adequately first made on appellate review. *State v. Moore*, 16-644 (La. App. 5 Cir. 3/15/17), 215 So.3d 951, 966, *writ not considered*, 18-495 (La. 11/14/18), 256 So.3d 283. *Brady* challenges must be brought to the trial court's attention,

winnowed by the trial judge, and made part of the record through a motion for new trial. *Id*. Therefore, as to the alleged dispatch records, we find that defendant did not raise this issue at the trial court level and that, therefore, it has not been preserved for appellate review.

In review of the record, we find the judge did not abuse his discretion in denying defendant's motion for new trial. This assignment of error is without merit.

## ERRORS PATENT REVIEW

The record was reviewed for errors patent according to La. C.Cr.P. art. 920;[19] *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5 Cir. 1990).

### *Restriction of Benefits as to Count Five*

Having determined that the evidence was sufficient as to count five, defendant's sentence on count five for theft is illegal. At the time of the offense, La. R.S. 14:67(B)(2) stated that when the misappropriation or taking amounts to a value of five thousand dollars or more, but less than a value of twenty-five thousand dollars, "the offender shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than ten thousand dollars, or both." Here, as to count five for theft, defendant was sentenced to eight years imprisonment at hard labor, the first year to be served without the benefit of parole, probation, or suspension of sentence. The trial judge improperly restricted benefits and the sentence must be amended.

When a sentencing error involves the imposition of restrictions beyond what the legislature has authorized in the sentencing statute, the Louisiana Supreme

---

[19] La. C.Cr.P. art. 920(2) states that an error patent is "[a]n error that is discoverable by an inspection of the pleadings and proceedings and without inspection of the evidence."

Court has ruled that the appellate courts "should not rely on La. R.S. 15:301.1(A) to correct the error as a matter of law but should correct the sentence on its own authority under La. C.Cr.P. art. 882 to correct an illegal sentence 'at any time.'" *State v. Thompson*, 18-273 (La. App. 5 Cir. 11/28/18), 259 So.3d 1257, 1273, *writ denied*, 18-2077 (La. 9/6/19), 278 So.3d 372 (quoting *State v. Sanders*, 04-17 (La. 5/14/04), 876 So.2d 42 (*per curiam*)).

Therefore, we amend defendant's sentence on count five to eliminate the restriction of parole, probation, or suspension of sentence. Further, we direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. *See Thompson*, *supra*; *State v. Brown*, 17-346 (La. App. 5 Cir. 12/13/17), 234 So.3d 1134, 1137.

### Restriction of Parole as to the Enhanced Sentence for Count Ten

Our review also reveals that the trial judge improperly restricted parole as to the enhanced sentence for count ten. La. R.S. 14:108.1(E)(1) provided at the time of the offense, "Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than five years and may be fined not more than two thousand dollars." The statue did not call for a restriction of benefits. Defendant stipulated to being a fourth-felony offender as to count ten. At the time of the underlying offense, La. R.S. 15:529.1(G) stated that any sentence imposed under the provisions of this section shall be at hard labor without the benefit of probation or suspension of sentence. When a defendant is sentenced as a multiple offender, it is the penalty provision for the underlying offense, La. R.S. 14:108.1 in this case, that imposes a parole restriction. *See State v. Gustave*, 22-139 (La. App. 5 Cir. 12/28/22), 355 So.3d 704, 714, *writ denied*, 23-149 (La. 12/19/23), 2023 WL

8731639.  In this case, the underlying offense does not provide for a restriction of parole.

Therefore, we amend the sentence to delete the restriction on parole in the enhanced sentence and remand this matter for the correction of the UCO and to direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and the Department of Corrections' legal department. *See State v. Burl*, 18-698 (La. App. 5 Cir. 10/2/19), 282 So.3d 316, 323, *writ denied*, 19-1948 (La. 7/2/20), 297 So.3d 764.

### *Post-Conviction Relief Advisal*

The sentencing minute entry for February 7, 2022 reflects that "the Court informed the defendant he has … two (2) years after judgment of conviction and sentence has become final to seek post-conviction relief."  The *nunc pro tunc* February 10, 2022 sentencing minute entry reflects the same.  The transcript does not show such an advisal.

If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. *State v. Britton*, 22-476 (La. App. 5 Cir. 5/10/23), 366 So.3d 652, 665.  Accordingly, we hereby advise defendant that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.  *See State v. Barnett*, 18-254 (La. App. 5 Cir. 4/3/19), 267 So.3d 209, 235.

## DECREE

For the foregoing reasons, defendant's convictions and sentences are affirmed, except that defendant's sentences are amended as to count five and count ten, and the matter is remanded to the trial court for further proceedings.

22-KA-373

**CONVICTIONS AFFIRMED; SENTENCES ON COUNTS FIVE AND TEN AMENDED; REMAINING SENTENCES AFFIRMED; REMANDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MAY 8, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-KA-373

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
MONIQUE D. NOLAN (APPELLEE)          THOMAS J. BUTLER (APPELLEE)          LIEU T. VO CLARK (APPELLANT)

**MAILED**
RAYMOND H. KIMBLE, III #503830          HONORABLE PAUL D. CONNICK, JR.
(APPELLANT)                              (APPELLEE)
ALLEN CORRECTIONAL CENTER                DISTRICT ATTORNEY
3751 LAUDERDALE WOODYARD ROAD            LINDSAY L. TRUHE (APPELLEE)
KINDER, LA 70648                         ASSISTANT DISTRICT ATTORNEY
                                         TWENTY-FOURTH JUDICIAL DISTRICT
                                         200 DERBIGNY STREET
                                         GRETNA, LA 70053